## PIPE V. SMITH.

1.  Under the statute (Gen. Laws, Section 1,682), bills for relief on the ground of fraud must be filed within three years after the discovery, by the aggrieved party, of the facts constituting the fraud.

2.  The rule is, that where the fraud is committed more than three years before the commencement of the action, the complaint should show that the discovery was made within the three years next preceding the commencement of the action.

3.  The complainant must allege not only his ignorance of the fraud, but when and how he discovered it.

4.  The bar appearing on the face of the bill, a demurrer to the bill will be sustained.

5.  Courts of equity will not interfere if a party slumbers on his rights or the means of detecting fraud. The full possession of the means of detecting a fraud is the same as knowledge.

*Appeal from District Court of Jefferson County.*

ON the 9th of May, 1878, John Pipe, the appellant, filed in the District Court of Jefferson County, his complaint, alleging as follows :

1st. ¶ That sometime during the year of 1859 or '60, William A. H. Loveland, of the town of Golden, in the county of Jefferson and State of Colorado, and others, citizens of the United States, settled upon the lands hereinafter described as embracing the town site entry of the said town of Golden (formerly Golden City), organized a town company, laid off in blocks and lots, with streets and alleys, all of said lands, except that portion lying east of East street in said town, and the respective occupants of lots in said town, erected houses and other buildings thereon, and otherwise improved the same, all of which was done before the government of the United States made a survey of such lands.

2nd. That afterwards, to wit, on the 11th day of December, A. D. 1863, and prior to the entry of said town site, the citizens of and residents, holders and occupants of lots in said town, by their agreement in writing of that date, subscribed

and delivered by them to the said W. A. H. Loveland, agreed with the said Loveland and with each other, that if the said Loveland, who was still then a citizen and large property owner of said town, and who also subscribed the said agreement as a party thereto, would advance and furnish to the probate judge of said county of Jefferson the necessary sum of money to enable such probate judge to enter and pay for such lands, he, the said Loveland, should be entitled to a deed from such probate judge to all the residue of such lands after they, the said citizens and occupants of lots in said town, should receive deeds of conveyance from such probate judge for all lots held by them respectively, and that they would not become litigants as against the land so to be entered and conveyed. That the said Ensign B. Smith, defendant, as one of said citizens and settlers, subscribed the said agreement, and was and is a party thereto. That in pursuance of said agreement, the said Loveland afterwards, to wit, on the day and year last aforesaid, as plaintiff is informed and believes, furnished and advanced to the said probate judge the necessary sum of money to enable him, the said probate judge, to enter and pay for said lands, to wit, the sum of five hundred dollars.

3d. That afterwards, to wit, on the 18th day of January, A. D. 1864, at the proper land office of the United States, under the act of Congress entitled "An act for the relief of citizens of towns upon the lands of the United States under certain circumstances," approved May 23, 1844, and with the said sum of money so advanced by the said Loveland, Henry Altman, then probate judge of said county of Jefferson and then Territory, now State of Colorado, as such probate judge, entered and paid for the said lands, in trust however, "for the several use and benefit of the occupants thereof, according to their respective interests," and which said lands are situate in the county of Jefferson and State of Colorado, and are known and described as follows, to wit: The west half of the southwest quarter of section twenty-seven (27), the east half of the southeast quarter of section twenty-eight (28), the east half of the

northeast quarter of section thirty-three (33), and the west half of the northwest quarter of section thirty-four (34), in township three (3), south of range seventy (70) west. That in pursuance of such entry and in consideration of the said sum of money so paid as aforesaid, the government of the United States afterwards issued patents for the said lands, bearing date the first day of September, A. D. 1866, running to the said Henry Altman, probate judge of the county aforesaid, his successors in office and assigns in trust, however, as aforesaid.

4th. That afterwards, by a private and special act, approved March 3d, 1864, entitled "An act to legalize and confirm the entry of the town site of Golden City," the Legislative Assembly of the then Territory of Colorado ratified and confirmed the said entry and the said agreement.

5th. The plaintiff is informed and believes that afterwards, to wit, either in the latter part of the month of March, to wit, after the 11th day of March, or in the month of April, 1864, the exact date of which he is unable to ascertain, in pursuance of the act of the Legislative Assembly of the then Territory of Colorado, approved March 11th, 1864, entitled an act prescribing rules and regulations for the execution of the trust arising under the act of Congress, entitled "An act for the relief of citizens of towns upon lands of the United States under certain circumstances," the said Henry Altman, probate judge as aforesaid, gave public notice of the entry aforesaid of said town site, by posting notices thereof in three public places in said town, the precise places of which, however, the plaintiff is unable to state, and by publishing the said notice in a newspaper called the Rocky Mountain News, at that time printed and published at Denver, in the county of Arapahoe, in the then Territory of Colorado, once a week for three successive weeks. That no newspaper was at that time printed and published in said county of Jefferson, and that the said Rocky Mountain News was the nearest newspaper to said town of Golden City, printed and

published in said Territory of Colorado, and that the said notice contained an accurate description of the lands so entered as aforesaid, as the same were stated in the certificate of entry of said lands received by the said probate judge from the land officers at the time of such entry.

6th. That after the said citizens and occupants of lots had received deeds of conveyance from the probate judge of said county of Jefferson to the respective lots and parcels of said lands, held by them respectively, and of all lots and parcels of said lands to which they were respectively entitled, in pursuance of law and of said agreement, Jonas M. Johnson, who had then become probate judge of said county of Jefferson, duly qualified and acting as such, on, to-wit, the 23d day of December, A. D. 1864, in pursuance of law, and the trust in him reposed as such probate judge, and in pursuance of said agreement, did, as such probate judge, make, execute, acknowledge and deliver to the said William A. H. Loveland a deed of conveyance of, in and to the said lands so entered in trust as aforesaid, bearing date the day and year last aforesaid, which deed of conveyance, however, contained an exception in words as follows: "Excepting what lots has heretofore been deeded to occupants or settlers, and what now remains in litigation, and the title yet undetermined by the probate judge holding them in trust, for the occupants of the town site of Golden City, under the pre-emption laws of Congress for the use of the occupants thereof," and which said deed of conveyance was afterwards, to-wit, on the 23d day of December, A. D. 1864, duly recorded in the office of the recorder of deeds of said county of Jefferson, in book " F," page 77, to which record reference is hereby made for greater certainty.

7th. That all that portion of the said lands embraced in the said town site entry lying east of East street, in said town, containing twenty-eight and 30-100 acres, more or less, was in litigation between one Henry B. Hine and the said Ensign B. Smith, defendant herein, in a proceeding there pending before the said J. M. Johnson, probate judge of said county of Jeffer-

son, wherein the said Hine was plaintiff and the said Smith defendant, at, to-wit, the date of making and delivery of the said deed of conveyance to the said Loveland, by the said probate judge.

8th. That afterwards, to-wit, on the 11th day of October, A. D. 1869, one Joseph Mann, then probate judge of said county of Jefferson, as such probate judge, made, acknowledged and delivered to the said Ensign B. Smith, his certain deed of conveyance of that date, of, in and to the said parcel of said lands so lying east of East street, in said town of Golden City, and more particularly described as follows: commencing at the northeast corner of the northwest quarter of the southwest quarter of section number (27) twenty-seven, in town (3) three south, range (70) seventy west, running thence west (20) twenty chains; thence south (2) two chains; thence south 34° 30′, twenty-three and one-fourth (23¼) chains; thence east (7) seven chains; thence north (20) chains, to the place of beginning, the same containing twenty-eight and thirty one-hundredths acres, and being that portion of the northwest quarter of the southwest quarter of section twenty-seven (27), township three (3) south, range seventy (70) west, lying east of East street; that such deed was made and delivered to the said Ensign B. Smith, defendant, by the said Joseph Mann, probate judge, as the result of the said litigation between the said Hine and Smith concerning the same parcel of land, and in pursuance of a stipulation and agreement made and entered into in writing between the said Hine and Smith, as the plaintiff is informed and believes.

9th. That the plaintiff is informed and believes, and so states the fact to be, that the said Henry B. Hine was not an occupant of, nor in possession of, nor entitled to the possession or occupancy of the said parcel of land, or of any part thereof so deeded and conveyed as aforesaid to the said defendant, Ensign B. Smith, at the date of the said town site entry, to-wit, on the 18th day of January, A. D. 1864, or at any time subsequent thereto.

10th. That the plaintiff is informed and believes, and so states the fact to be, that the said Ensign B. Smith was not an occupant of, nor in possession of, nor entitled to the possession or occupancy of the said parcel of land, or of any part thereof so deeded to him as aforesaid, at, to wit, the date of the said entry, or at any time prior thereto, nor was the said defendant an actual occupant of, or entitled to, the occupancy or possession thereof, or of any portion thereof, at any time subsequent to the date of said entry; that the plaintiff is further informed and believes, and so states the fact to be, that neither the whole nor any part of said land so deeded by Joseph Mann, probate judge, to Ensign B. Smith, the defendant as aforesaid, was occupied or in the possession of any person or persons, or association of persons or company, either at the date of the said agreement, or of the said town site entry, but that the same was vacant and unoccupied, and was not held or claimed by any person, settler, resident, or citizen of said town.

11th. That plaintiff is informed and believes, and so states the fact to be, that the said Henry B. Hine did not within ninety days next after the first publication of the said notice so printed and published in the newspaper, as aforesaid, in person, or by his duly authorized agent or attorney, sign a statement in writing containing an accurate description of the said parcel of land, or any portion thereof, so deeded to the said Ensign B. Smith, as aforesaid, and of the specific right, interest or estate therein which he claimed to be entitled to receive, and deliver the same to or into the office of the probate judge of said county of Jefferson, and that no such statement was at any time prior to, or since the making and delivery of said deed to said Ensign B. Smith, as aforesaid, delivered to or into the office of said probate judge, by the said Henry B. Hine, or by any agent or agents, or attorney or attorneys for him, and in his behalf.

12th. That the plaintiff is informed and believes, and so states the fact to be, that the said Ensign B. Smith, defendant, did not, within ninety days next after the first publication o.

said notice, in person or by his duly authorized agent or attorney, sign a statement in writing containing an accurate description of the said parcel of land, or any portion thereof so deeded to him as aforesaid, and of the specific right, interest or estate therein, which he claimed to be entitled to receive, and deliver the same to or into the office of the Probate Judge of said county of Jefferson, and that no such statement was at any time prior to the 23d day of December, A. D. 1864, the date of the said deed to Loveland, delivered to or into the office of the probate judge of said county of Jefferson by the said Smith, or by any person or persons for him or in his behalf.

13th. That the plaintiff is informed and believes, and so states the fact to be, that the said Joseph Mann, probate judge, as such probate judge, executed and delivered the said deed of conveyance to the said Ensign B. Smith, defendant, without hearing or having heard any evidence or proofs touching the rights either of the said Smith or the said Hine to the parcel of land, or any portion thereof described in said deed, and that the same was executed and delivered without authority of law, and in violation of the trust in him, the said probate judge, reposed.

14th. That the parcel of land described in said deed from Mann, probate judge, to Smith, defendant, was not prior to the date of said town site entry, laid off into blocks and lots, and did not originally form a part of the town site of Golden City, but that since the said entry the same has been platted and laid off into blocks and lots having streets and alleys, and is now known as Bush and Fisher's addition to the town of Golden.

15th. That notwithstanding the said exception in his said deed from the probate judge to him contained, the said William A. H. Loveland claiming to have both the legal and equitable title to the said parcel of land so deeded to Smith as aforesaid, did on the 20th day of June, A. D. 1866, by his deed of conveyance of that date, release and quit-claim unto John J.

Bush, Silas W. Fisher and Joseph B. Cass, the undivided two-thirds of the said parcel of land so described in the deed, and deeded to said Smith as aforesaid by Joseph Mann, probate judge, as well as to other portions of the said town site entry; that afterwards, to wit, on the 21st day of January, A. D. 1868, by their separate deeds of that date, the said Fisher and Cass reconveyed to the said Loveland, so far as they had the right and power so to do, an undivided one-third thereof, they, the said Bush, Fisher and Cass having previously by deeds of release released to each other in such manner that the said Fisher and Cass were each possessed and entitled, so far as the said several deeds could make them, to an undivided one-sixth of said parcel of land, and the said Bush to an undivided one-third thereof. That afterwards, to-wit, on the third day of November, A. D. 1869, the said Loveland, so far as he could by deeds so do, by his deeds of that date conveyed an undivided one-sixth of said parcel of land to one Henry Nutt; that afterwards, to-wit, on the 4th day of March, A. D. 1870, the said Loveland, Bush, Nutt, and one Mary B. Jennison, so far as they had the right and power to do, by their deed of conveyance of that date, conveyed to one Edward L. Berthoud, lots one (1), two (2), three (3), four (4), five (5), and six (6), in block nine (9), in said Bush and Fisher's addition to the town of Golden aforesaid; that the said Berthoud afterwards, to-wit, on the 8th day of March, A. D. 1870, by his deed of that date, conveyed so far as he had title thereto, the said lot six (6) to one Margaret Fisher; and afterwards, on the 28th day of June, A. D. 1870, by his deed of that date, the said Berthoud conveyed to the said Loveland the said lots one, two, three, four and five, so far as he, Berthoud, had title thereto; that, afterwards, to-wit, on the 29th day of February, A. D. 1872, the said Loveland executed and delivered to the plaintiff a title bond to the same lots one, two, three, four and five, conditioned that upon the payment by plaintiff of a certain promissory note in said bond described, made and delivered to the said Loveland by the plaintiff, he, the said Loveland, would execute and deliver to the plaintiff a

deed of conveyance to said lots; that, afterwards, to-wit, on the 22nd day of August, A. D. 1872, the said Margaret Fisher and her husband, by their deed of that date, so far as they had title thereto, conveyed the said lot six to the plaintiff; that on or about the said 22nd day of August, A. D. 1872, the plaintiff obtained a quiet and peaceable possession of the said lots one, two, three, four, five and six, in block nine, in Bush and Fisher's addition to the town of Golden aforesaid, and hath ever since been and still is in the actual possession thereof, and occupies the same as a place of business and for a residence for himself and family.

That plaintiff paid for said lot six, which had a house thereon at the time he purchased the same, the sum of five hundred dollars, and that for said other five lots he made and delivered to the said Loveland his promissory note, being the same note as described in said bond for the sum of twelve hundred dollars, payable three years after the date thereof, with interest at the rate of two per cent. per month from date until paid, dated the 29th day of February, A. D. 1872.

16th. That between the date of his so acquiring the possession of said lots as aforesaid, and the 13th day of May, A. D. 1873, the plaintiff made great, lasting and valuable improvements thereon, to-wit, of the value of one thousand dollars, and that he made such improvements without actual notice of the adverse claim of the defendant thereto.

17th. That on the said 13th day of May, A. D. 1873, in the District Court within and for the said county of Jefferson, said Ensign B. Smith, defendant, commenced an action of ejectment against the plaintiff for all said lots, in which said action of ejectment the said Smith is plaintiff and this plaintiff is defendant; that such proceedings have been had and taken in said action of ejectment; that, afterwards, to-wit, at the November term, A. D. 1877, of the District Court within and for the county of Jefferson and State of Colorado, a judgment of eviction against the defendant in said action, and in favor of the plaintiff therein was rendered by said court; that the

plaintiff herein hath taken an appeal from said judgment to the Supreme Court of the State of Colorado, and that the same is now pending in the said Supreme Court.

18th. That he had no actual notice of the said adverse claim of the defendant to said lots until after the commencement of the said action of ejectment, and that he purchased and improved the said lots in good faith; that the said lots constitute and form a part of the land described in the said deed from Joseph Mann, Judge, to the defendant.

19th. That until after the said judgment was obtained in said action of ejectment, as aforesaid, the plaintiff was informed and induced to believe and did believe that he had a good defense at law to said suit, but since the rendition of said judgment he hath been induced to believe that he hath no just defense to said suit at law, but that his claim is only an equitable one, which is not allowed to him in said suit, and that plaintiff is without an adequate remedy at law.

20th. That the defendant has threatened and is threatening to press and is now pressing the said appeal to a hearing in the said Supreme Court, and plaintiff is afraid that the said Supreme Court will affirm the said judgment of eviction, and that the defendant will obtain possession of the said lots by means of said suit, unless restrained by the order of this court in the premises.

Wherefore the plaintiff demands judgment.

1. That the defendant, his agents and attorneys, be restrained by injunction from the further prosecution of said action of ejectment and from enforcing the said judgment, by writ of possession or otherwise, if the same be affirmed in and by the said Supreme Court.

2. That the said deed of conveyance from Joseph Mann, probate judge, to the defendant, be delivered up and canceled.

3. And for such other and further relief in the premises as to the court may seem just and proper.

4. And for the costs of this action.

The complaint was duly verified.

The appellee, Smith, demurred, alleging as grounds of demurrer,

"1st. That the said complaint does not state facts sufficient to constitute a cause of action. 2d. That said complaint shows that said cause of action is barred by the Statute of Limitations.

"3d. That the said complaint is ambiguous and uncertain."

The District Court sustained the demurrer, and entered judgment dismissing the action. To reverse this judgment, Pipe prosecutes this appeal.

Mr. WILLARD TELLER and Mr. A. H. DeFRANCE, for appellant.

Messrs. CARPENTER and BLACKBURN, for appellee.

ELBERT, C. J. The appellant claims through Loveland, and his right to the relief prayed is of no better or higher character than would be Loveland's right, if himself complainant.

The premises in dispute were within the exception contained in the probate judge's deed to Loveland of December 23, 1864, and title did not pass. *Pipe* v. *Smith*, 4 Col. 444.

Whatever claim Loveland had to the premises is based on his agreement of December 11, 1863, with certain citizens of the town of Golden City. This agreement, in fact, forms the basis of the present action. For the purposes of this decision, we need not enter upon the question of the validity of the agreement, for if its validity be admitted, the action is barred, by the Statute of Limitations. But for the allegation of fraud the provisions of section 1683 would be applicable to and would bar the action; this allegation, however, brings the action within the provisions of section 1682, General Laws, p. 597.

The claim is that in virtue of this agreement, after having conveyed to occupants the lots to which they were respectively entitled, the probate judge held the residue of the town site entry in trust for Loveland; that the deed of December 23,

1864, to Loveland, was not a full discharge of this trust, but only a partial execution of it; that he was still entitled under the agreement to receive a further conveyance of the premises excepted from the operation of his deed, there being no legal claimants thereto under the town site act; that the defendant, Smith, was not entitled under said act, and that the conveyance to him by the probate judge by his deed of October 11, 1869, was in fraud of Loveland's rights and equities under the agreement. The bill seeks to have this deed annulled and title decreed to appellant as grantee of Loveland.

Although the fraud charged is constructive, it is within the statute. *Wilmerding* v. *Russ*, 33 Conn. 75; *Keeton* v. *Keeton*, 20 Mo. 531. It consisted, as is claimed, in the execution of the deed to the defendant Smith, when (1) he had not filed his statement, as required by the town site act, within the ninety days, and (2) when he was not an occupant of the premises.

Bills for relief on the ground of fraud must be filed within three years after the discovery by the aggrieved party of the facts constituting the fraud. Gen. Laws, Sec. 1682. The deed from the probate judge to Smith, which is sought to be annulled as fraudulent and void, was executed October 11, 1869. This action was commenced May 9, 1878, more than eight years thereafter.

The bill does not allege when the facts constituting the fraud were discovered. The rule is that where the fraud is committed more than three years before the commencement of the action, the complaint should show that the discovery was made within the three years next preceding the commencement of the action. *Carpenter* v. *The City of Oakland*, 30 Cal. 444; *Sublette* v. *Tenney*, 9 Cal. 423; Ang. Lim. sections 183, 296. He must not only allege his ignorance of the fraud, but when and how he discovered it. *Carr* v. *Hilton*, 1 Curtis, c. c. 390; *Moore* v. *Green*, 2 Curtis, c. c. 203. The bar of the statute appeared on the face of the bill, and the demurrer was properly sustained. Ang. Lim. 294, and cases cited. *Sublette* v. *Tenney, supra.*

Again, we are of the opinion that the facts stated in the complaint would preclude a finding of discovery within the three years preceding the commencement of the action, if alleged. Loveland and his grantees, prior to the decree, were dealing with property, the subject not only of a *lis pendens*, but the subject of a public trust under the laws of Congress. The exception in Loveland's deed was of lots. \* \* \* in litigation, and the title yet undetermined by the probate judge holding them in trust for the occupants of the town site of Golden City, under the pre-emption laws of Congress, for the use of the occupants thereof, and he was thereby charged with notice of the litigation and its results. The probate judge found Smith entitled under the law, and his deed to Smith was not only a recognition of this title, but a denial of Loveland's claim to the premises. Loveland's right of action, if any he had, then accrued.

In the absence of fraud, an action seeking to enforce the trust claimed to be created by the agreement, would have been barred under the provisions of section 1683, after five years. The allegation of fraud, however, brings the action within the provisions of section 1682; and the statute commenced to run upon the discovery of the facts constituting the fraud.

As before said, the existence of two principal facts are claimed as rendering the deed to the defendant Smith fraudulent and void. (1) The defendant Smith filed no statement claiming the premises within the ninety days, as required by the act. (2) He was not an occupant of the premises or the *bona fide* owner of improvements thereon. Neither were matters susceptible of concealment; the first was a matter of record, and involved its inspection; the second was of easy ascertainment, involving an examination of the premises. The right he claimed under the agreement, the notice of the litigation, his knowledge of the deed, should have put him upon inquiry. An inspection of the record and an examination of the premises, would have disclosed his right of action.

It was the duty of purchasers to examine Loveland's title. The very terms of the agreement put purchasers from Loveland upon inquiry, as to what action had been taken by the probate judge respecting the premises in dispute. The probate judge's records and files were accessible and open to inspection. An examination would not only have shown the result of the litigation, but the facts constituting the fraud. Not only this, but the plaintiff in this case had actual notice of the adverse claim of Smith by the commencement of the action of ejectment in May, 1873, five years prior to the commencement of this suit. In fact, the discovery of the fraud three years prior to the commencement of the suit, is impliedly, if not directly, admitted by the bill, but its effect is sought to be avoided by the allegation that the plaintiff considered that the facts constituted a good defense at law.

In answer to this it is sufficient to say that ignorance of the law respecting the remedy which it provides will not prevent the statute from running. Independently of statute, courts of equity would not allow the statute to run in the case of fraud until after the discovery of the facts constituting the fraud. Ang. Lim. Secs. 183–185 et seq.; *Troupe* v. *Smith*, 20 Johns, 33, section 1,682, is but an enactment of this equitable doctrine, with a fixed period of limitation.

But whether it be enforced as a statutory provision or an equitable rule, it is subject to the same rule of diligence touching the discovery of the fraud. Courts of equity will not interfere if a party slumbers on his rights or the means of detecting the fraud. Ang. Lim. Sec. 190; *Young* v. *Cook*, 30 Miss. 330; *Johnson* v. *Johnson*, 5 Ala. 103; *Veazie* v. *Williams*, 3 Story, 530; *McClure* v. *Ashley*, 7 Richardson's Eq. R. 440.

The presumption is that if a party affected by any fraudulent transaction or management, might with ordinary care and attention have seasonably detected it, he seasonably had actual knowledge of it. Ang. Lim. 187, and cases cited.

In *Farnham* v. *Brooks*, 9 Pick. 212, it was said that full possession of the means of detecting a fraud, was the same as knowledge.

Loveland and his grantees cannot be permitted to sleep on their rights for eight years, either with knowledge of the fraud, or with the means of its detection within their power by the least ordinary diligence.

The action must be regarded as barred by the statute, and the judgment of the court below is affirmed with costs.

*Affirmed.*