# No. 16,565.

## WRIGHT ET AL. *v.* NELSON.
(242 P. [2d] 243)

Decided March 3, 1952.   Rehearing denied March 24, 1952.

Mr. Bernard J. Seeman, Mr. James D. Doyle, for all garnishees except Paul A. Nelson.

Mr. A. D. Quaintance, Mr. William D. Johnson, for defendant in error.

*En Banc.*

Mr. Justice Clark delivered the opinion of the court.

Plaintiffs in error are here by writ of error to have reviewed the proceedings in the district court in and for the county of Jefferson, wherein judgment was entered against them as garnishees following traverse of their answer in an action in that court then pending wherein Tora Nelson was plaintiff, and Paul A. Nelson defendant. We will herein refer to plaintiffs in error by name or as garnishees; Tora Nelson will be designated as plaintiff, and Paul A. Nelson as defendant.

September 20, 1948, an execution was issued in the original proceeding of Nelson v. Nelson, and on September 30th garnishee summons was served upon all garnishees appearing herein, which are all those named in the title hereof with the exception of Paul A. Nelson. Answers were made by garnishees to the effect that they were not indebted to defendant, had no property of his in their possession, and knew of no debts owing to him. They also stated therein that defendant was not then a partner in Sharp Point Fish Hook Company, and that the only partners were Stanley M. Wright and

Andrew D. McGill. Thereupon plaintiff traversed the answers of each and all of said garnishees alleging that defendant was an owner of a one-third interest in certain machine patents belonging to Sharp Point Fish Hook Company, and entitled to one-third of the profits from the manufacture and sale of its products; that defendant had assigned to Wright and McGill and transferred to them his one-third interest in said patents and profits without consideration and with intent to hinder, delay and defraud his creditors and particularly the plaintiff; that said garnishees knew of said fraud and deceit and of the purpose and intent of said defendant in undertaking to dispose of his property. To this traverse the garnishees filed answer, first setting forth certain admissions and denials, and by way of further defense alleged: 1. That plaintiff's action against the garnishees is barred by the statute of limitations; 2. that plaintiff is barred by reason of her acquiescence and laches; and 3. that the patent hereinabove referred to was not the property of Sharp Point Fish Hook Company, it having been assigned to Wright and McGill Company; that defendant had been a partner in the Sharp Point Fish Hook Company, but that he had sold his interest therein to Stanley M. Wright and Andrew D. McGill; that he received for such conveyance and assignment consideration in excess of the amount provided for in the partnership agreement; that at the time of said sale the garnishees knew nothing about domestic troubles between plaintiff and defendant and deny that said transfer was made for the purpose of defeating or delaying creditors.

Trial was begun before the court without a jury on October 27, 1948, during which, and at the conclusion of plaintiff's case, the garnishees moved for dismissal which was denied by the trial court. Upon conclusion of the trial the matter was taken under advisement by the court and final judgment entered therein on Septem-

ber 16, 1949, in favor of plaintiff and against the garnishees in the sum of $11,879.03.

To present a proper perspective of the matters before the court, it is necessary to review the background and relate the history as shown by the record herein prior to the issuance of the garnishee summons. Plaintiff and defendant were married in 1917, came to Denver in 1918, and defendant went to work for Wright and McGill Company in 1933. On July 28, 1936, defendant left home, and in September of the same year, plaintiff instituted her action for divorce. Notwithstanding that defendant waived service of summons in the divorce action and promptly entered his appearance therein, various delays occurred and interlocutory decree was not entered in the cause until January 29, 1942, followed by final decree on April 17, 1943. By the interlocutory decree plaintiff was awarded certain property, in addition to which defendant was directed to pay to her, within fifteen days, $5,000 support money and alimony pendente lite. Matters of permanent alimony and attorneys fees were reserved for later determination. In its final decree of April 17, 1943, the court awarded judgment in favor of plaintiff in the sum of $35,000 plus attorneys fees of $3,500. By our decision July 2, 1945, the judgment of the trial court with respect to these awards was reversed in part because not supported by competent evidence, but the original order for $5,000 temporary alimony, as set forth in the interlocutory decree, was affirmed, together with an allowance of attorneys fees in the sum of $500. *Nelson v. Nelson*, 114 Colo. 31, 161 P. (2d) 780.

On October 28, 1946, plaintiff filed in the trial court a petition said by her counsel to have been in pursuance of further showing with respect to defendant's financial ability to pay, and to the end that increased allowance of alimony be adjudged on account of changed conditions. To this petition defendant's attorney filed a motion to dismiss which, on May 14, 1947, was granted. No

further direct proceedings in the divorce action were had, and such was the state of the record with respect thereto at the time of the issuance of the execution and garnishment of the plaintiffs in error herein.

We think it also well to show somewhat in detail the relationship, during the period of time covered by said divorce proceeding, between the defendant therein and these garnishees.

Pursuant to a formal contract of employment dated September 12, 1933, between defendant, as first party, and Wright and McGill Company, a Colorado corporation, of the second part, defendant entered the employ of said company as a draftsman and mechanic at a certain stipulated wage scale and for the purpose of designing a "hook making machine," agreeing therein to assign to the party of the second part all claims for design, mechanical features and title to said hook making machine. By written instrument, dated July 23, 1935, defendant assigned all of his patent rights on said machine to Wright and McGill Company. Pursuant to the aforementioned agreement, on September 15, 1936, patent was issued to Wright and McGill Company.

Under date of September 3, 1937—over a year after defendant had left plaintiff, and approximately a year after plaintiff had commenced her divorce proceeding—Paul A. Nelson, Andrew D. McGill and Stanley M. Wright entered into a limited partnership agreement, known as Sharp Point Fish Hook Company, for the purpose of manufacturing fishhooks as a licensee by use of the machine to which Wright and McGill Company held patent. Each party held a one-third interest in the concern, and it was specifically provided therein that in the event of the death, withdrawal or retirement of any partner, the two remaining partners would have the exclusive right to purchase his one-third share upon payment of two thousand dollars, together with one-third of the cash on hand and accounts receivable as of that date; providing such option was exercised within six

months of the date of such death, withdrawal or retirement.

Operations under the partnership agreement continued until March 31, 1941, when defendant Nelson served notice upon his partners that he was desirous of retiring from said Sharp Point Fish Hook Company, whereupon the partnership was dissolved and the settlement agreement put in writing and signed by the parties as of that date, Andrew D. McGill and Stanley M. Wright purchasing the interest of Nelson. The agreement itself does not reflect the cash consideration, but it is undisputed that McGill and Wright were to pay Nelson a total sum of $16,879.73 in full for his entire one-third interest; that figure having been agreed upon after the making of certain adjustments. It further was agreed that the purchasers should pay Nelson five thousand dollars cash at that time, which was done, and should have time within which to pay the balance of $11,879.73. It also is without dispute that the final payment of said amount in the sum of $1,879.73 was made to Nelson on the 29th day of December, 1941, at which time he executed an instrument constituting a full receipt for all moneys due him, and likewise a confirmation of the settlement agreement.

At and about the time of the conclusion of the settlement and under date of April 1, 1941, the three former partners of the Sharp Point Fish Hook Company signed a notice of dissolution, which later was published in The Colorado Graphic in four consecutive issues, the first of which was November 15 and the last December 6, 1941.

From the foregoing it is manifest that error of the trial court in certain respects is disclosed by the record itself and needs only to be mentioned to be clearly apparent. (1) After finding and determining in its decree that the sale of Nelson to Wright and McGill was and is fraudulent as to the rights of the plaintiff, the trial court limits the fraudulent transaction to the bal-

ance of $11,879.03 due Nelson under the sale contract, but exempts therefrom the $5,000 cash payment made to him under the same contract. There clearly is no logical reason for such differentiation. If the contract be fraudulent in part, it is fraudulent in whole, and the judgment of the court under the rule it adopted should have been $16,879.73. (2) On the other hand, garnishment is but an ancillary proceeding, here in aid of execution issued pursuant to an existing judgment, thus limiting any judgment proper to be entered against the garnishees to the extent of the unpaid balance of the judgment upon which the execution issued. *Witkowski v. Hill,* 17 Colo. 372, 374, 375, 30 Pac. 55. In this case it is apparent that no valid final judgment was ever entered in the Nelson divorce case in excess of $5,000 plus $500 attorneys fees, together with the accruing interest thereon and costs. (3) While the trial court held against all of plaintiffs in error as garnishees, the record very clearly discloses that the only ones thereof that could possibly be affected are Sharp Point Fish Hook Company, Stanley M. Wright and Andrew D. McGill. There is no evidence whatsoever indicating any liability as garnishees, or otherwise, on the part of Wright and McGill Company or Wright and McGill Rod Company. Certainly judgment of dismissal as to these two concerns should have been ordered.

The items mentioned in the foregoing paragraph are, however, more or less incidental, the primary question being whether the trial court was justified in entering any judgment whatsoever against the garnishees. A review of the entire record clearly indicates not only that plaintiff's counsel, but the court as well, entertained a strong tendency to confuse and commingle the issues in the divorce proceeding proper with the matters which pertain exclusively to the position of plaintiff with respect to these garnishees. They are two separate transactions involving altogether different legal principles. While it may be true that the plaintiff has been unfairly

dealt with by defendant, even to the extent where her treatment at his hands might justly incur the normal human resentment of the trial judge, nevertheless, this feeling must not be permitted to infract the rights of the garnishees, unless it clearly appears that they likewise are guilty of some breach of duty.

■ In view of well recognized legal precepts, we confess that we are unable to find in this record competent and relevant evidence sufficient to afford justification of the trial court findings in effect that the garnishees had knowledge of the domestic difficulties of the Nelsons; that the sale of defendant's interest in the Sharp Point Fish Hook Company was with intent of defrauding plaintiff as a creditor; that such intent was shared and participated in by the garnishees; that the consideration was inadequate; and that said sale was fraudulent as to the rights of plaintiff; the effect of which would be to require the garnishees to duplicate in payment to plaintiff a sum equal to the amount which they already had paid to the defendant for his share in said business. It must be borne in mind, that in order to justify such conclusions, plaintiff must sustain by preponderance of the evidence all of these propositions overcoming the usual presumption that the sale is valid, and that it was not attended with fraudulent intent nor illegal purpose. *Sutton v. Dana,* 15 Colo. 98, 25 Pac. 90. In *Roberts v. Dietz,* 86 Colo. 595, 597, 284 Pac. 337, citing cases in support thereof, the following rule is laid down: "To justify the setting aside of a conveyance because made to hinder and delay a creditor, it must appear that the hindering and delaying was intended to be produced by the grantor through covin, malice, or for the grantor's own benefit and advantage. * * * And it also must appear that the grantee participated in, or had knowledge or notice of, the grantor's intent." One of the citations in the Roberts case is *Burdsall v. Waggoner,* 4 Colo. 256, wherein, at page 258, the following statement appears: "To set aside a conveyance for fraud

against creditors, something more than a fraudulent intent upon the part of the grantor is required. *Want of consideration or knowledge of the fraud on the part of the grantee* must be shown, or there must be some secret trust between the parties, or other circumstances which will operate to debar the grantee from protection as a purchaser." (Emphasis supplied.) To the same effect, see, '35 C.S.A., chapter 71, section 21.

Counsel stress the point that, at the time of the settlement and sale on the 31st day of March, 1941, by defendant to the garnishees, both Wright and McGill were aware of the fact that defendant and plaintiff were not living together. That may be quite true, but of itself is no cogent reason since it also is true that at the time of the formation of the partnership in September, 1937, the Nelsons were not living together. There was no direct evidence that the garnishees were aware of the pending divorce proceeding either at the time of the formation of the partnership or at the date of its dissolution three and one-half years later. It is well recognized as a general rule that a husband's property is free of any vested interest in the wife, and that his right to sell and convey it at his pleasure is unrestricted. *Norris v. Bradshaw*, 96 Colo. 594, 45 P. (2d) 638. We do not mean to infer that a husband cannot be guilty of fraud in the transfer of his property with intent to defeat just rights of his wife, but before the rights of third persons may become involved in such a situation, it must be shown that such third parties knew the facts and participated in the fraudulent transaction. We are doubtful if the facts of this case warranted such a finding. With respect to the matter of consideration it is clear that the garnishees paid to defendant Nelson the full value of his third interest in the partnership as provided by the terms of the instrument creating the same, and even in excess thereof. The interest possibly may have been worth more than was paid for it, if it were possible to sell it on an open market, but the partnership agree-

ment itself provided the terms and compensation to be paid upon withdrawal of any member therefrom.

We believe that the judgment of the trial court might well be reversed by reason of the failure of sufficient competent evidence to support its findings and conclusions. There is, however, a still clearer and more cogent reason why this judgment should not be affirmed. By her traverse of the answer of the garnishees, plaintiff seeks to vacate the transfer of defendant's interest in the Sharp Point Fish Hook Company to Wright and McGill as being in fraud of creditor's rights. In addition to denials, the garnishees pleaded in answer the bar of statutory limitation and laches. The applicable statute reads as follows: "Bills for relief, on the ground of fraud, shall be filed within three years after the discovery by the aggrieved party, of the facts constituting such fraud, and not afterwards." §13, c. 102, '35 C.S.A.

██ Counsel for plaintiff contend that their client did not learn of defendant's assignment of interest until she procured the testimony of witness Kirkley, an auditor for Sharp Point Fish Hook Company, in a hearing before the court in October, 1947, upon a petition filed on her behalf to modify the judgment of the court pertaining to alimony. Incidently, the testimony of Kirkley was taken pending a ruling upon a motion to dismiss plaintiff's application, which motion was subsequently granted.

With respect to this matter the record shows, in addition to the things already mentioned, the admission on behalf of plaintiff that she had been aware of the fact that defendant claimed a one-third interest in the Sharp Point Fish Hook Company. She admitted that shortly after he first went to work for Wright and McGill, defendant had told her that if the machine worked out satisfactorily, he would become a one-third owner in the business; that later he told her that he had a one-third interest in the company, and that he repeated this statement to her "not long before he left Colorado." She also

admits that she did not go to either Wright or McGill and inquire of them directly concerning defendant's interest in business with them. On December 9, 1941, she procured from the court an order enjoining the Metropolitan Life Insurance Company from making certain payments under policies held by defendant until further order of the court. Interlocutory decree was entered January 29, 1942, and extensive parts thereof were devoted to the setting aside to her of certain property interests, admittedly being all of the property of defendant that she could find. Notwithstanding her belief that defendant was the owner of a one-third interest in the Sharp Point Fish Hook Company, and her admission that he had many times told her so, plaintiff at no time undertook to ascertain whether or not her information in that respect was correct. At any period during the progress of this long drawn out litigation she might well have sought and procured an order enjoining the present garnishees from paying any money over to defendant. She could have had them brought before the court for the purpose of making inquiry as to the status of defendant in their business enterprise. She could at least have served them with formal notice that she was claiming an interest to the extent of the ownership of defendant in that business. She did none of these things until the issuance of the garnishee summons under the execution issued September 20, 1948, some twelve years after the commencement of her divorce action; seven and one-half years after defendant had sold his interest in the business to garnishees; and over six and one-half years after the entry of final decree. Certainly the means of detection and ascertaining the facts resulting from the transaction between her former husband and these garnishees were at her disposal. "Courts of equity will not interfere if a party slumbers on his rights or the means of detecting the fraud. * * * The presumption is that if a party affected by any fraudulent transaction or management, might with ordinary care and attention have seasonably

detected it, he seasonably had knowledge of it." *Pipe v. Smith*, 5 Colo. 146, 159. One may not close his eyes, and then excuse his failure to act by saying that he did not see. He may not turn his back, and then justify his lack of knowledge by saying that he was no̤ ·- position to observe, and thus excuse himself from a auty, the performance of which must constitute the basis of his action. *Harding v. Burris*, 52 Colo. 132, 119 Pac. 1063.

In the case of *Bowman, Trustee v. May*, 102 Colo. 417, 80 P. (2d) 327, an action in the nature of a creditor's bill to set aside a conveyance of property, defendant, as the garnishees here, pleaded section 13, chapter 102, '35 C.S.A., quoted above, concerning which we said, at page 421: "In construing this section, we have held that full possession of the means of detecting a fraud is equivalent to knowledge. *Pipe v. Smith*, 5 Colo. 146. * * * This means of detecting the fraud was peculiarly within the power of the creditor, notwithstanding, he waited for five years before attempting to force collection of his judgment. * * * 'Courts of equity will not interfere if a party slumbers on his rights or the means of detecting the fraud.' (Citing cases)"

██ We are impressed with the inclination on the part of the trial court to do everything within its power to protect the interests of plaintiff and, to the best of his ability, see that she procures a fair share of property in a settlement with her former husband. We must not forget, however, that courts may not do for litigants the thing that litigants should do for themselves. A trial court may not properly go beyond the facts presented to it, in undertaking to reach desired results, and the Supreme Court is wholly powerless in this regard since it may not go beyond the record of proceedings had in the trial court. Neither would be justified under the facts and circumstances of this case in undertaking to impose upon those not guilty of culpable wrong, nor otherwise obligated, the burden of paying unto plaintiff that which she should collect from defendant.

The fact that defendant failed to pay over to plaintiff any part of the proceeds he received from the sale of his share of the business is not the fault of the garnishees. These funds plaintiff might have had sequestered before they were paid over to defendant had she but used that degree of diligence required of her by the rules of both law and equity, and with which apparently both she and her counsel were wholly familiar, as evidenced by their conduct in other phases of this litigation.

For the reasons aforesaid, the judgment is reversed, and the cause remanded with direction to the trial court to vacate the judgment against the garnishees and dismiss the action as to them.