UNITED STATES of America, Plaintiff,

v.

Jerome E. MORGAN and Sue Morgan; Ross and Georgina Brown; State of Colorado, Department of Revenue; Sears Roebuck and Company; and Gudrun E. Gaskill, Defendants.

Civ. A. No. 80–A–828.

United States District Court, D. Colorado.

Nov. 1, 1982.

584

Robert S. Horwitz, Trial Atty., Tax Division, Dept. of Justice, Washington, D.C., for plaintiff.

Robert Mendel, Denver, Colo., for Jerome E. Morgan and Sue Morgan.

Kenneth E. Peck of Holland & Hart, Denver, Colo., for Ross and Georgina Brown.

Billy Shuman, Asst. Atty. Gen., Denver, Colo., for State of Colo., Dept. of Revenue.

Richard Rose, Denver, Colo., for Sears Roebuck and Co.

John F. Shafroth, Denver, Colo., for Gudrun E. Gaskill.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

This action was brought by the United States to reduce to judgment tax assessments against Jerome Morgan, to set aside as fraudulent a conveyance of real property by Jerome Morgan to Sue Morgan, and to foreclose federal tax liens upon the property. I have granted the government's motion for summary judgment against Jerome Morgan on the question of his liability for income taxes assessed for calendar years 1974, 1975, and 1976. A trial to the court was held October 4, 1982 on the issue of whether Jerome's conveyance to his wife of his interest in the family home should be set aside under Colorado's fraudulent conveyance statute. The following shall constitute my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). Questions concerning the priorities of liens on the property are reserved for future decision.

### The Challenged Conveyance

Jerome and Sue Morgan purchased a house and acreage at 528 Pine Song Trail in Golden, Colorado, in 1973, taking the property in joint tenancy. The following year they bought additional lots adjoining the original acreage, taking these too in joint tenancy. They made the property their home and reared two children there. From the time of their marriage in 1959 until October of 1976, Jerome's employment income was the primary means of support for the family. He became unemployed in October of 1976 and has not worked since.

Jerome incurred substantial income tax liabilities for calendar years 1974, 1975, and 1976 which remain unpaid. He did not file his 1974 and 1975 returns until June of 1977. He signed these on June 14, 1977, the date of the challenged conveyance. He timely filed his 1976 return, but failed to remit payment for the liability reported. Jerome and Sue had filed joint tax returns for years prior to 1974; however, Jerome filed the 1974, 1975, and 1976 returns separately. The Morgans testified at trial that she did not sign the later returns because she did not want to be held responsible for the reported tax liabilities.

In May of 1977, the Internal Revenue Service made a formal assessment and demand for payment of the 1976 taxes. In August of 1977, the I.R.S. made similar assessments and demands for the 1974 and 1975 taxes. By force of 26 U.S.C. § 6321, these assessments created liens against all of Jerome's property. The tax liens of the United States are superior to the interests of all other claimants, except those expressly given priority. 26 U.S.C. § 6323.

On June 14, 1977, roughly one month after the assessment for 1976 taxes and one month before the assessments for 1974 and 1975 taxes, Jerome signed a quitclaim deed conveying his one-half interest in the property to Sue. They admit that she paid him nothing in consideration of the transfer, and that he was insolvent immediately after the transfer.

Jerome met with a revenue officer to discuss his tax liability on December 2, 1977. At the agent's request, he completed a financial statement on which he listed the house as one of his assets. When the agent learned of the conveyance to Sue, he asked why it had been made. Jerome responded that the purpose of the transfer was to prevent attachment by creditors. At some point in the meeting, the possibility that the I.R.S. would foreclose was discussed. The agent requested that Jerome have the property placed back into joint tenancy and provide the I.R.S. with documentary proof of the reconveyance. Jerome agreed in writing to do this. The promise was never kept.

Despite the conveyance of Jerome's interest to Sue, they both continued to represent that Jerome was a part owner. Jerome listed the house as an asset on the personal financial statement he prepared at the revenue agent's request. On or before January 17, 1978, Jerome responded to interrogatories posed by a judgment creditor in a state court action by twice stating that he owned the house with his wife. On two occasions after the conveyance, Jerome and Sue redeemed the property from foreclosure sales, claiming to be its owners.

At the time of Jerome's June 14, 1977 conveyance, he faced massive debts. Collection activities by his creditors had become intense. Foster Lumber Company had caused the house to be sold at foreclosure, and the Morgans narrowly averted the issuance of a public trustee's deed by redeeming the property on June 10, 1977. On October 25, 1977, Ross and Georgina Brown, as holders of the first deed of trust, filed a Notice of Election and Demand for Sale. (This was later withdrawn.) Samuel Frisch commenced foreclosure of a third deed of trust on April 4, 1978. Again the Morgans redeemed the property. In addition, at least six other creditors obtained money judgments against Jerome between July of 1977 and March of 1978, and the suit of yet another creditor was settled out of court. In summary, the circumstances of Jerome's financial position in the summer of 1977 gave him ample reason to anticipate that the forced sale of his interest in the house was imminent.

■ When a taxpayer disposes of his property prior to the time a federal tax lien arises, the United States may sue to have the conveyance set aside as fraudulent under the laws of the state where the property is located. *Commissioner v. Stern,* 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958). Colorado's fraudulent conveyance statute provides that any conveyance "made with the intent to hinder, delay, or defraud creditors" is void. Colo.Rev.Stat. § 38–10–117 (1973).

■ A conveyance made with the requisite intent is void as to both present and future creditors. *Fish v. East,* 114 F.2d 177, 183 (10th Cir.1940); *Gregory v. Filbeck,* 12 Colo. 379, 21 P. 489, 490 (1889); *House v. Johnson,* 19 Colo.App. 524, 76 P. 743, 743 (1904). That the transferor did not intend to defraud his creditors will not defeat a suit to void a transfer as fraudulent. If the transferor's intent was merely to hinder or to delay the payment of his creditors, the transfer will be voided. *Fish v. East, supra,* at 182; *Italian-American Bank of Denver v. Lepore,* 79 Colo. 466, 246 P. 792, 793 (1926); *Mohler v. Buena Vista Bank and Trust Co.,*

588 P.2d 894, 895–96 (Colo.App.1978). The requisite intent may be shown, of course, by circumstantial evidence. *Fish v. East, supra,* at 183.

■ When the transfer in question is between unrelated parties, the courts require more than a showing of fraudulent intent on the part of the transferor. Want of consideration or knowledge of fraud on the part of the transferee must also be shown. *Wright v. Nelson,* 125 Colo. 217, 242 P.2d 243, 246–47 (1952). However, "where a debtor conveys lands to his wife when he is insolvent, or by the transfer is made insolvent, the husband and wife have the burden to establish by clear and satisfactory proof that the conveyance was for a valuable consideration, and without intent to hinder, delay, or defraud creditors of the husband." *Armstrong v. Fishbach,* 95 Colo. 64, 67, 32 P.2d 828, 829 (1934). *Accord Gutheil v. Polichio,* 103 Colo. 426, 431–32, 86 P.2d 972, 974 (1939); *Thuringer v. Trafton,* 58 Colo. 250, 144 P. 866, 868 (1914).

The Morgans have failed to meet this burden of proof. Indeed, if the burden of proof were on the government, I would still find that the Morgans intended to hinder and delay their creditors generally, and the I.R.S. in particular, by the conveyance. For his own part, Jerome admitted as much to the I.R.S. revenue agent, and the facts could hardly support a contrary conclusion.

■ Defendants assert the general principle that a transfer cannot be set aside as a fraudulent conveyance unless the transferee knew of, or participated in, the transferor's intent. *See Fish v. East,* 114 F.2d 177, 183 (10th Cir.1940); *Roberts v. Dietz,* 86 Colo. 595, 284 P. 337, 338 (1930); *Helm v. Brewster,* 42 Colo. 25, 93 P. 1101, 1104 (1908). They contend that Sue had no such knowledge or intent. Without conceding that the asserted principle applies to transfers between husband and wife under these circumstances, I find that Sue also intended to hinder or delay creditors by the conveyance.

Sue Morgan testified that she knew Jerome was indebted to several creditors, including the I.R.S.; that she was acutely aware of the possibility of foreclosure by Jerome's creditors; and that this caused her great anxiety. It seems highly unlikely that she did not discuss these matters with her husband and gain privy to his plans for dealing with them. She knew that she would be personally liable for the taxes on Jerome's income for the years 1974 to 1976 unless she withheld her signature from the returns. She knew that Jerome was unemployed and that he was transferring to her the only asset with which he could hope to satisfy the just demands of his creditors. Sue testified that saving the house was foremost on her mind in the summer of 1977. It is no coincidence that the only way to prevent or delay foreclosure involved the actions she cooperated in taking: Jerome's separate filing of his tax returns and the transfer of his one-half interest in the house to her.

Defendants also contend that the conveyance was part of a bona fide loan transaction entered into with Sue Morgan's parents, the Oliversons. Over a period of several years prior to and including 1977, the Oliversons gave approximately $15,000 to the Morgans and their creditors. In particular, the Morgans made an urgent plea for funds on June 9, 1977, and the Oliversons gave them approximately $5,000 on that day. The $5,000 included a check made payable to the Public Trustee of Jefferson County in an amount sufficient to redeem the house from foreclosure.

The Oliversons and the Morgans referred to all of these payments as "loans" which the Morgans were to repay when they were able to do so. They testified that the Oliversons were reluctant to make the June 9, 1977 payments, and consented only on the condition that Jerome transfer his interest in the house to Sue. Defendants contend that Sue's exclusive ownership was intended to provide security for the loans, and that if the loans were not repaid by the time the Morgan children graduated from high school, she was to sell the property and pay the loans with the proceeds. Mr. Oliverson testified that he trusted Sue, but not Jerome, to keep the property clear of additional encumbrances.

On this interpretation of the facts, defendants assert first that the conveyance was merely a permissible preference of one creditor over others. Additionally, they contend that by virtue of the transfer, Sue became a "purchaser," as defined by 26 U.S.C. § 6323(h)(6), and therefore took the property free of the lien for 1976 taxes, for which public notice had not yet been filed. *See* 26 U.S.C. § 6323(a). Neither of these conclusions is correct.

■ The argument that Jerome's conveyance was a legitimate preference of the Oliversons over other creditors is groundless. A preference requires some form of payment, or the transfer of other valuable rights to a creditor. The conveyance to Sue did not have the purpose or the effect of conferring legal rights on the Oliversons or of discharging the asserted debt in any degree.

■ Nor can Sue claim the protections of a "purchaser" under 26 U.S.C. § 6323(a). I find that the Morgans intended by the conveyance to hinder creditors, for their own advantage. This being true, the conveyance is void even if, as defendants contend, it was made for full and adequate consideration. *Helm v. Brewster*, 42 Colo. 25, 93 P. 1101, 1104 (1908). Section 6323(a), which protects "purchasers" from unrecorded tax liens, was surely not intended to change this result.

■ Moreover, several facts make it appear that the Oliversons' payments to or for the benefit of the Morgans were gifts, and never intended to be repaid. The Oliversons never took the simple step of obtaining a note of indebtedness from the Morgans. They never obtained a deed of trust. In the more than twenty years since they began giving money to the Morgans, they have not been repaid, if at all, more than a nominal amount, despite the fact that for a number of years during that period the Morgans had a substantial income.

For the foregoing reasons, the challenged conveyance cannot stand. The law will not sanction such a flagrant disregard of the rights of Jerome's creditors. I turn now to the matter of foreclosure of the tax lien.

## Lien Foreclosure

■ Defendants assert that the Colorado homestead statute operates to bar foreclosure of the government's tax lien, relying upon *United States v. Hershberger*, 475 F.2d 677 (10th Cir.1973). In that case, the Tenth Circuit held that when a homestead law creates a property interest in the delinquent taxpayer's spouse, the United States may not foreclose a tax lien upon the homestead property to collect taxes for which the spouse is not liable. The challenged conveyance in the present case having been voided, the Morgans hold their property in joint tenancy. It is concededly homestead property under Colo.Rev.Stat. § 38–41–202(1) (1981 Supp.), in spite of the fact that a declaration of homestead was not recorded until September 8, 1982. It is also conceded that Sue Morgan is not liable for the taxes in question.

In *Hershberger,* the court was confronted with a Kansas homestead statute which had been expressly construed by state courts as conferring upon the record owner's spouse an estate in land. *See Helm v. Helm,* 11 Kan. 19 (reprinted in second edition at 25). After concluding that Congress has given federal courts the equitable power to decline to foreclose federal tax liens under appropriate circumstances, the court stated:

Homestead laws not creating a present property interest but rather conferring privileges and exemptions are subordinate to the federal tax liens. But when the homestead laws expressly provide for a present property interest and confer more than merely an exemption, such as is found under Kansas law, the homestead interest is good against the federal tax lien.

475 F.2d at 682 (citations omitted).

■ The Tenth Circuit's statement should not be taken to mean that foreclosure of a tax lien may never be had upon property owned jointly by the delinquent taxpayer and a spouse who is not liable for the tax. On the contrary, in such a situation the district court generally has the

discretion to foreclose the lien on the entire property, on only the taxpayer's interest, or not at all. *United States v. Eaves,* 499 F.2d 869, 871 (10th Cir.1974).

 Nor should it be taken to mean that the district court may not foreclose a tax lien upon property jointly owned by the nontaxpayer spouse whenever the property is a homestead. This point is illustrated by the Fifth Circuit's ruling in *United States v. Rogers,* 649 F.2d 1117 (5th Cir.1981), *cert. granted sub nom. United States v. Rodgers,* 456 U.S. 904, 102 S.Ct. 1748, 72 L.Ed.2d 160 (1982), which follows the *Hershberger* line of reasoning. In *Rogers,* the propriety of foreclosure upon a taxpayer's undivided interest in the homestead property was held to depend upon the nature of the rights conferred by the homestead statute, even though, as here, his wife owned a one-half interest in the homestead which would be affected by foreclosure. Accordingly, the tax lien in the present case may be foreclosed, at least upon Jerome Morgan's interest in the property, if under Colorado law a homestead interest is not a distinct interest in land.

The Colorado homestead statute, Colo. Rev.Stat. § 38–41–201 (1981 Supp.), declares simply:

> Every homestead in the state of Colorado occupied as a home by the owner thereof or his family shall be exempt from execution and attachment arising from any debt, contract, or civil obligation not exceeding in value the sum of twenty thousand dollars in actual cash value in excess of any liens or encumbrances on the homestead property in existence at the time of any levy of execution thereon.

Unlike the Kansas statute considered in *Hershberger, supra,* the Colorado statute has never been construed to create an interest in land. The Colorado homestead has been referred to as an "exemption," and nothing more. *See, e.g., Thomas v. Hysom,* 167 Colo. 218, 446 P.2d 911, 911–12 (1968). Any similarity in wording between the Colorado and Kansas statutes is irrelevant in view of the entirely different meanings drawn from them by the highest courts of those states.

Defendants contend, however, that until July of 1977 the Colorado statute did create a distinct estate in homestead property. Prior to that time, a conveyance of homestead property required the signatures of both spouses in all cases. Colo.Rev.Stat. § 38–35–118(1) (1973) (amended 1977). This rule was modified to allow the owner to convey homestead property without his or her spouse's consent unless a declaration of homestead has been properly recorded. 1977 Colo.Sess.Laws 1719, § 2 (codified as Colo.Rev.Stat. § 38–41–202(3) and (4) (1981 Supp.)). Defendants assert that Sue Morgan, having acquired a vested property right by virtue of the former statute, could not be divested of that right by legislative amendment. *See Galligher v. Smiley,* 28 Neb. 189, 44 N.W. 187, 189 (1889). *See also Morris v. Porter,* 393 S.W.2d 385, 387 (Tex. Civ.App.1965) (homestead right held to be "vested").

 These arguments are without merit. Defendants have presented no authority for the proposition that the naked right to prevent one's spouse from making a voluntary conveyance of homestead property constitutes an estate in land. Moreover, the overwhelming weight of authority supports the rule that a debtor's homestead exemption privileges do not constitute vested rights which are beyond the legislature's power to modify or abolish. *See Estate of Murray,* 133 Cal.App.3d 601, 183 Cal.Rptr. 924, 926 (1st Dist.1982); *In Re Blair's Estate,* 42 Cal.2d 728, 269 P.2d 612, 615 (1954); *Nesmith v. Nesmith,* 155 Fla. 823, 21 So.2d 789, 789 (1945); *Petrulionis v. Dudek,* 113 Ill.App.2d 398, 252 N.E.2d 23, 25 (1969); *In Re Ragan's Estate,* 237 Iowa 619, 23 N.W.2d 521, 523 (1946); *French v. French,* 91 Nev. 248, 533 P.2d 1357 (1975); *Walkup v. Covington,* 173 Tenn. 7, 114 S.W.2d 45, 47 (1938); *Sherwin-Williams Co. v. Morris,* 25 Tenn.App. 272, 156 S.W.2d 350, 352 (1941). The Colorado homestead statute plainly does not create a distinct interest in land, and foreclosure upon Jerome's interest in the property is therefore not barred by the rule of *Hershberger, supra.*

*Conclusion*

For the reasons stated above, Jerome Morgan's June 14, 1977 transfer to his wife of his one-half interest in the property located at 528 Pine Song Trail, Golden, Colorado, is hereby set aside. It is further adjudged that the United States holds a valid tax lien upon Jerome's undivided interest, and is entitled to foreclosure upon that interest. Upon the suggestion of counsel for the United States and the Morgans, the parties will be allowed until December 20, 1982 to agree upon arrangements for the sale of the property and the disposition of proceeds. If agreement cannot be reached by that time, the Court will set the matter down for further hearing and final disposition.