**Brad R. WOODWARD, Wendy J. Woodward, Jeannette S. Wilson, Don W. Crompton, Wiltse P. Crompton, K. Brett Garn, Paul Rowe, Arnold F. Egan, for themselves and for and on behalf of all persons similarly situated, Plaintiffs-Appellants,**

**v.**

**TERRACOR, a Utah Corporation, Continental Mortgage Investors, a Massachusetts Business Trust, Carl Marks & Company, Inc., United American Life Insurance Company, Fleschner-Becker-Erlich Fund, N.V. and FBA Partners, Diversified Mortgage Investors, Avco Financial Services, Glendon E. Johnson, Franklin D. Johnson, Clifton I. Johnson, H. Roger Boyer, Ellis R. Ivory, and Does 1 through X inclusive, Defendants-Appellees.**

No. 76–1720.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 15, 1977.

Decided April 10, 1978.

Rehearing Denied May 5, 1978.

Richard G. Cook, Salt Lake City, Utah, for plaintiffs-appellants.

Daniel L. Berman, Salt Lake City, Utah (Berman & Giauque and Garry F. Bendinger, Salt Lake City, Utah, on the brief), for defendant-appellee Terracor.

Bruce A. Maak, Salt Lake City, Utah (Martineau & Maak and C. Keith Rooker, Salt Lake City, Utah, on the brief), for defendant-appellee H. Roger Boyer.

James B. Lee and David S. Dolowitz of Behle & Latimer, Salt Lake City, Utah, on the brief, for defendant-appellee Avco Financial Services, Inc.

James R. Brown, Salt Lake City, Utah (Jardine, Johnson & Baldwin, Salt Lake City, Utah, on the brief), for defendants-appellees Glendon E. Johnson, Franklin D. Johnson, and Ellis R. Ivory.

Edward J. McDonough and Frederick P. McBrier of Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, on the brief, for defendant-appellee United American Life Ins. Co.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

The seven individual plaintiffs in this proceeding sue in their individual capacities and also seek to represent a class. The named plaintiffs all purchased lots in Stansbury Park, a planned residential community in Tooele, Utah. The first named defendant, Terracor, a Utah corporation, was the developer of Stansbury Park. Several financial institutions which had loaned money to Terracor were also named as parties defendant. Additional defendants included stockholders, officers, directors, and employees of Terracor.

The action was brought under federal securities laws, the securities laws of the State of Utah, and in common-law fraud. The complaint alleged, *inter alia*, that the sale of the lots constituted the sale of a security, in the form of an investment contract, within the meaning of Section 2(1) of the Securities Act of 1933, as amended, 15 U.S.C. § 77b, Section 3(a)(10) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78c(a)(10) and Section 61–1–13(12) of the Utah Code.

There was extensive pre-trial discovery, primarily by the defendants. Both the plaintiffs and the defendants then moved for a summary judgment on the issue of whether the purchase of the residential lots by the plaintiffs constituted an investment contract. It was the plaintiffs' position that, based on the record as then made, there was no genuine issue of fact on this particular matter and that their purchase of the lots was an investment contract. The defendants' position was that the record demonstrated conclusively that the purchase of the lots was not an investment contract, and hence not within the ambit of the federal security laws. The trial court granted the defendants' motion for summary judgment and entered judgment accordingly. Additionally, the trial court granted the motion of one of the individual defendants, Roger Boyer, for summary judgment on the ground that he was not a "control person" within the meaning of 15 U.S.C. § 77o and 15 U.S.C. § 78t. The plaintiffs now appeal the dismissal of their action. We affirm.

The ultimate issue in this appeal is whether the purchase by the plaintiffs of subdivision lots in a residential development constituted an investment contract, and, as such, subject to the federal securities laws. The fact that the plaintiffs and defendants both moved for summary judgment on this matter, though not controlling, indicates that the parties themselves were of the view that, under the circumstances, the question was one of law, not of fact.

■ 15 U.S.C. § 77b(1) provides that an "investment contract" is a form of a "security." The Supreme Court has declared that an investment contract, for the purposes of the federal securities acts, is a "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . ." *S. E. C. v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In determining whether a particular transaction is, or is not, an investment contract, substance is exalted over form, and emphasis is placed on economic reality. *McGovern Plaza Joint Venture v. First of Denver*, 562 F.2d 645 (10th Cir. 1977); *Vincent v. Moench*, 473 F.2d 430 (10th Cir. 1973); and *Continental Marketing Corp. v. Securities & Exchange Com'n*, 387 F.2d 466 (10th Cir. 1967).

■ Stansbury Park was conceived and promoted by Terracor as a planned residential community. To promote the sale of individual building sites, Terracor repre-

sented that Stansbury Park would eventually become a self-sufficient community. Included in the plans were shopping centers, health and cultural facilities, transportation facilities, and abundant recreational opportunity, including a golf course and lake.

The plaintiffs each purchased lots as future building sites in Stansbury Park, although several indicated that they themselves did not intend to actually build on the land, and that they bought the land as an "investment." In each instance the land was acquired by the execution of what is referred to as a Uniform Real Estate Contract. This was the only agreement between the plaintiffs and Terracor. This real estate contract provided only for the sale of the described parcels of land together with the usual improvements, such as culinary water, underground sewage, curb, gutter, and the like.

Although there is in our view no genuine issue of fact pertaining to the question of whether we are here concerned with an investment contract, the parties are in dispute as to what has happened to the Stansbury Park project. The plaintiffs state in their brief that progress on the project has been slow and that the project itself is "dying on the vine." In this general regard, though it is not pertinent to our resolution of the present controversy, the fraud relied on by the plaintiffs is an alleged misrepresentation by the defendants as to their financial ability to carry the project to final completion. The defendants, however, in their brief, state, for example, that all the recreational facilities mentioned in promotional material have been constructed and that Stansbury Park today is in fact a "burgeoning community." As indicated, however, this factual dispute does not bear on the issue in this appeal.

The test in *Howey*, above referred to, has recently been reaffirmed in *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). *United Housing* involved stock in a corporation owning and operating a housing cooperative. In holding that the transaction considered there did not involve a security, the Supreme Court quoted the *Howey* test and then went on to state:

> This test, in shorthand form, embodies the essential attributes that run through all the Court's decisions defining a security. The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profit to be derived from the entrepreneurial or managerial efforts of others. Id. at 852, 95 S.Ct. at 2060.

Applying the *United Housing* test to the instant case, the question becomes whether there was an *investment* by these plaintiffs in a *common venture* with *Terracor* which was premised on a reasonable expectation of profit to be derived from the *managerial effort of Terracor.* Like the trial court, we conclude that the present case does not measure up to that test. We particularly fail to see any common venture or common enterprise between the plaintiffs and Terracor.

Terracor itself was involved in a business venture. Terracor was developing a new residential community. As part of its venture Terracor sold lots to persons who either intended to build houses thereon, or intended to resell to others who would so build. But the mere fact that the plaintiffs bought lots from Terracor does not mean that by such acquisition they were thereafter engaged in a common venture or enterprise with Terracor. The only contractual agreement between plaintiffs and Terracor was the Uniform Real Estate Contract. Terracor was under no contractual obligation to the plaintiffs other than to deliver title once purchase terms were met. Unlike *Howey*, Terracor was not under any collateral management contract with the purchasers of its land. In short, the record in the instant case simply shows the purchase by the plaintiffs of lots in a real estate development. Though it is possible that the plaintiffs may have a common-law remedy against the defendants arising out of the purchase of the lots, such does not mean that the transaction itself is an "investment contract," thereby invoking the provisions of the federal securities laws.

A case which illustrates our thinking on the matter is *Davis v. Rio Rancho Estates, Inc.,* 401 F.Supp. 1045 (S.D.N.Y.1975). There the plaintiffs alleged that they bought lots in Rio Rancho Estates as an investment, expecting the lots to appreciate in value through the sole efforts of the defendant promoters. In dismissing such complaint for failure to state a claim, the court spoke as follows:

If defendants in fact built roads and other improvements, this is not the type of managerial service contemplated in *Howey, supra,* or *United Housing, supra.* Defendants did not promise to run the development and distribute profits to the plaintiff, as did the operators of the orange groves in *Howey.* There was no management contract between plaintiff and defendants, nor were defendants obligated by the Purchase Agreement to perform any such services. Defendants' attempts to induce purchasers to build or their efforts, if any, to enhance living conditions in the development were unrelated to plaintiff. Their interest was in recouping their investment, making a profit and moving on. Any benefit to plaintiff would be purely incidental.

In the absence of a "common enterprise" between the parties, the expectation of a profit on resale is insufficient to transform what is essentially a sale of real property into the sale of an investment contract:

"Plaintiff's effort to shoe-horn their land speculation into the definition of the Securities Acts in our opinion fails. They have alleged only a superficial similarity with the leading cases on this point and have not distinguished their transactions from any other agreement to purchase real estate in undeveloped land." *Bubula v. The Grand Bahama Development Co.,* (N.D.Ill. June 7, 1974, unreported decision, pp. 4–5)

The plaintiffs in *Bubula* alleged that written contracts for the purchase of undeveloped land on Grand Bahama Island were investment contracts. The Court disagreed and dismissed the complaint. Contracts for the purchase of undeveloped lots in recreational subdivisions in California were held not to be investment contracts in *Happy Investment Group v. Lakeworld Properties, Inc.,* 396 F.Supp. 175 (N.D.Cal.1975). See also *Contract Buyers League v. F & F Investment,* 300 F.Supp. 210 (N.D.Ill.1969) and 1 Loss, Securities Regulation, pp. 491–2 (2d ed., 1961):

"The line is drawn, however, where neither the element of a common enterprise nor the element of reliance on the efforts of another is present. For example, no 'investment contract' is involved when a person invests in real estate, with the hope perhaps of earning a profit as the result of a general increase in values concurrent with the development of the neighborhood, as long as he does not do so as part of an enterprise whereby it is expressly or impliedly understood that the property will be developed or operated by others."

The plaintiffs in the instant case have in our view failed to shoe-horn their land speculation into the parameters of the federal securities laws.

In this Court the plaintiffs place almost total reliance on *McCown v. Heidler,* 527 F.2d 204 (10th Cir. 1975). It is plaintiffs' position that if we adhere to *McCown* we must reverse the trial court and remand the case with directions to grant the plaintiffs' motion for summary judgment and hold that as a matter of law the present transaction does constitute an investment contract within the meaning of the federal securities laws. We do not believe that *McCown* dictates such a result.

In *McCown,* the plaintiffs bought lots in a real estate development. They later brought suit against the seller alleging common-law fraud and violations of the Interstate Land Sales Full Disclosure Act. 15 U.S.C. § 1701, *et seq.*[1] The trial court

---

1. The plaintiffs in the instant case did not assert a claim under the Land Sales Full Disclosure Act.

granted summary judgment in favor of the defendants on the basis that the Land Sales Full Disclosure Act did not apply to the defendants named in the *McCown* case. Prior to the summary judgment hearing, the plaintiffs in *McCown* sought leave to file an amended complaint alleging violations of the federal securities laws by the defendants. The trial court refused such request, terming the effort to be "wholly without merit."

On appeal, in *McCown*, we reversed, holding that the Land Sales Full Disclosure Act did apply to the named defendants. Additionally, we held that the trial court erred in refusing to permit the plaintiffs to file an amended complaint alleging violations of the federal securities laws. In so holding we noted that the plaintiffs in *McCown* proposed to allege in their amended complaint, and to prove at trial, that there was more than a mere offer and sale of lots in the real estate subdivision, and that the sellers in *McCown* were under "contractual promise" to do certain enumerated things which would enhance the value of the individual building sites in the project. In the instant case there is no suggestion that Terracor is under any contractual obligation to do anything more than deliver title upon payment of the purchase price. That, to us, is a significant difference between *McCown* and the present case.

Our holding in *McCown* was that the trial court erred in refusing to allow the plaintiffs to file an amended complaint setting up alleged violations of the federal securities laws. We did not hold that if the plaintiffs in *McCown* proved all that they offered to prove they would establish an investment contract within the meaning of the federal securities laws. Rather, we simply held that there remained a factual question as to whether the sale of the lots constituted a sale of securities. In the instant case both sides agree that there is no factual question, and that the matter should be resolved as a question of law. On the record before it the trial court did not err in granting the defendants' motion for summary judgment and in denying the like motion filed by the plaintiffs.

Having determined that the trial court's judgment should be affirmed for the reason that the transaction under consideration is not an investment contract, we need not here consider whether the trial court was also correct in dismissing the action against the one defendant, Roger Boyer, on the ground that he was not a "control person" within the meaning of 15 U.S.C. § 77o and 15 U.S.C. § 78t.

Judgment affirmed.