Hillard H. ALDRICH and Amy Aldrich,
Plaintiffs-Appellants,

v.

McCULLOCH PROPERTIES, INC.,
McCulloch Oil Company, Pueblo Wes
Metropolitan District, Holly Develop-
ment Co., John Doe and Richard Roe,
Defendants-Appellees.

No. 78–1872.

United States Court of Appeals,
Tenth Circuit.

Argued May 7, 1980.

Decided Aug. 5, 1980.

Robert J. Dyer, III, Denver, Colo. (Gerald L. Bader, Jr., Denver, Colo., with him on brief) of Bader & Dufty, Denver, Colo. (and Richard A. Pundt of Silliman, Gray & Stapleton, Cedar Rapids, Iowa; Ronald L. Luehrsmann, Dyersville, Iowa; Edward Gallagher, Jr. and Edward Gallagher, III of Gallagher, Martin, Keith & Langlas, Waterloo, Iowa, with him on brief), for plaintiffs-appellants.

Thomas J. McDermott, Jr., Los Angles, Cal. (Howard O. Boltz, Jr., Los Angeles, Cal., with him on brief) of Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal. (and Tuck Young of Lattimer, Bollinger, Young & Drummond, Pueblo, Colo., with him on brief), for defendants-appellees.

Before SETH, Chief Judge, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Plaintiffs' appeal is from the district court's dismissal of their amended complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Plaintiffs, purporting to represent a class of purchasers, filed this action more than eight years after purchasing subdivided lots in defendants' "Pueblo West" real estate development. The complaint as amended alleged that the lots were "securities" within the meaning of federal securities laws, Record, vol. 1, at 8, and that the defendants fraudulently concealed plaintiffs' causes of action. Record, vol. 1, at 42. Plaintiffs sought relief under the Securities Act of 1933, the Securities Exchange Act of 1934 and S.E.C. Rule 10b–5, the Interstate Land Sales Full Disclosure Act (ILSFDA), and several pendent common law theories. The defendants moved for dismissal under Fed.R.Civ.P. 12(b). The district court ruled that the lots were not securities and that all of plaintiffs' claims were barred by the applicable statutes of limitations.

## I. Existence of a Security

In granting the motions to dismiss, the district court first determined the complaint failed to allege the necessary elements of a "security" under federal securities laws. Plaintiffs urge that the purchased lots, combined with defendants' promises to develop, constitute "investment contracts" included in the statutory definitions of a security. See Securities Act of 1933 § 2(1), 15 U.S.C. § 77b(1); Securities Exchange Act of 1934 § 3(a)(10), 15 U.S.C. § 78c(a)(10). For the purposes of this appeal, we do not decide whether plaintiffs indeed purchased a security; we hold only that plaintiffs' allegations are sufficient to preclude determination of this issue on a Rule 12(b) motion.

The district court had before it only plaintiffs' complaint. Plaintiffs averred, *inter alia*, that they purchased lots with investment intent, that defendants encouraged investment purchases by promising the lots would increase in value because of defendants' activities in developing and providing amenities, and that defendants led purchasers to believe a trust would be established to construct and operate facilities for their common benefit. See Record, vol. 1, at 8, 12, 13–14.

These allegations conform roughly to the contours of the investment contract definition: a "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). That the plaintiffs did not expect to realize any tangible gain until they sold their property does not preclude investment intent. "Profits" as used in the investment contract definition may be "capital appreciation resulting from the development of the initial investment."[1] *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975). Similarly, a common enterprise does not require the sale of undivided interests or an entirely separable and express management contract. See *S.E.C. v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 349, 64 S.Ct. 120, 122, 88 L.Ed. 88 (1943). While there is language in the complaint from which it could be inferred that what plaintiffs purchased was not an investment in a common enterprise but merely individual parcels of real estate, resolution of these conflicting inferences was inappropriate without greater factual exploration.

A security is not always an easily recognized creature. See *S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The nature of the asset involved is not important.[2]

The test rather is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect. In the enforcement of [securities acts] it is not inappropriate that promoters' offerings be judged as being what they were represented to be. *S.E.C. v. C. M. Joiner Leasing Corp.*, 320 U.S. at 352–53, 64 S.Ct. at 124.

Central to this test is the promotional emphasis of the developer. See *United Housing Foundation, Inc. v. Forman*, 421 U.S. at 852–54, 856, 95 S.Ct. at 2051; *S.E.C. v. W. J. Howey Co.*, 328 U.S. at 300, 66 S.Ct. at 1103; *Continental Marketing Corp. v. S.E.C.*, 387 F.2d 466, 468 (10th Cir. 1967), *cert. denied*, 391 U.S. 905, 88 S.Ct. 1655, 20 L.Ed.2d 419 (1968); *Davis v. Rio Rancho Estates, Inc.*, 401 F.Supp. 1045, 1049–50 (S.D.N.Y. 1975). Characterization of the inducement cannot be accomplished without a thorough examination of the representations made by the defendants as the basis of the sale. *Fogel v. Sellamerica, Ltd.*, 445 F.Supp. 1269, 1278 (S.D.N.Y. 1978); *Timmreck v. Munn*, 433 F.Supp. 396, 402–04 (N.D.Ill. 1977). Promotional materials, merchandising approaches, oral assurances and contractual agreements were considered in testing the nature of the product in virtually every relevant investment con-

---

1. Capital appreciation through development should be distinguished from a general increase in land values concurrent with neighborhood growth and improvements. See 1 L. Loss, *Securities Regulation* 491–92 (2d ed. 1961).

2. The fact that these are real estate interests now covered by the ILSFDA does not automatically exclude them from the purview of the securities laws. See *Jenne v. AMREP Corp.* [1978] Fed.Sec.L.Rep. (CCH) ¶ 96,343, at 93,166 (D.N.J.1978). In enacting the ILSFDA, Congress acknowledged that there is a point at which the sale of unimproved, subdivided land becomes a securities transaction. The regulatory emphasis then broadens to include the unique concerns of the federal securities laws. See Securities Act Release No. 5347, [1972–73] Fed.Sec.L.Rep. (CCH) ¶ 79,163, at 82,536. Interpretation of these laws must be flexible enough to include "[n]ovel, uncommon, or irregular devices, whatever they appear to be," *S.E.C. v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 351, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943), and whatever other regulatory schemes they may arguably be subject to.

tract case. *See, e. g., United Housing Foundation, Inc. v. Forman,* 421 U.S. at 853–54, 95 S.Ct. at 2060–61; *S.E.C. v. C. M. Joiner Leasing Corp.,* 320 U.S. at 346–47, 346 n. 3, 64 S.Ct. at 121, 121 n. 3; *Woodward v. Terracor,* 574 F.2d 1023, 1024–25 (10th Cir. 1978); *McCown v. Heidler,* 527 F.2d 204, 209–10 (10th Cir. 1975); *Continental Marketing Corp. v. S.E.C.,* 387 F.2d at 470; *Jenne v. AMREP Corp.,* [1978] Fed. Sec.L.Rep. (CCH) ¶ 96,343, at 93,166 (D.N.J. 1978). *See also* Securities Act Release No. 5347, [1972–73] Fed.Sec.L.Rep. (CCH) ¶ 79,-163, at 82,539. An action should not be dismissed without an exploration of these materials where, as here, the plaintiffs reasonably allege the existence of investment intent and common enterprise and where nothing in the complaint precludes the finding of a security.

Defendants place some emphasis on what they perceive to be the limitations read into *McCown v. Heidler,* 527 F.2d 204 (10th Cir. 1975), by this court in *Woodward v. Terracor,* 574 F.2d 1023 (10th Cir. 1978). This case, however, clearly does not go beyond the scope of the *McCown* rule as described in *Woodward.* In *McCown* we allowed the plaintiffs to amend their complaint to allege violation of federal securities laws by the developers of a recreational subdivision. We held that the developers' obligation to enhance the value of the otherwise worthless lots by providing amenities and the emphasis in their sales approach on investment rather than residence in the project created a factual question which survived a motion for summary judgment. *See Woodward v. Terracor,* 574 F.2d at 1026–27. In this case, the district court dismissed on the pleadings; therefore it could not delve into the contractual obligations or the sales approach emphasis of the defendants.

Upon examination of additional evidence on remand, it may become apparent that the plaintiffs cannot satisfy the minimum requirements for surviving summary judgment under *McCown* and *Woodward.* Clearly the lots are not securities if the purchasers were induced to obtain them primarily for residential purposes—"to occupy the land or to develop it themselves." *S.E.C. v. W. J. Howey Co.,* 328 U.S. at 300, 66 S.Ct. at 1103. *See United Housing Foundation, Inc. v. Forman,* 421 U.S. at 853, 95 S.Ct. at 2060; *Woodward v. Terracor,* 574 F.2d at 1025; *McCown v. Heidler,* 527 F.2d at 211. Similarly, if the benefit to the purchasers of the amenities promised by defendants was largely in their own use and enjoyment, the necessary expectation of profit is missing. *See United Housing Foundation, Inc. v. Forman,* 421 U.S. at 857, 95 S.Ct. at 2062. *See also Grenader v. Spitz,* 537 F.2d 612, 618–19 (2d Cir.), *cert. denied,* 429 U.S. 1009, 97 S.Ct. 541, 50 L.Ed.2d 619 (1976). Indeed, the facts may show that defendants were under no obligation by contract or promise to provide significant development services for the benefit of purchasers. Furthermore, the obligation to perform minimal managerial functions or to provide basic improvements does not transform a real estate sale into a securities transaction. The real burden of management and development, even by the most liberal tests, must rest on the developers. *See S.E.C. v. W. J. Howey Co.,* 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946); *Woodward v. Terracor,* 574 F.2d at 1026; *S.E.C. v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973); *Timmreck v. Munn,* 433 F.Supp. 396, 403 n. 4 (N.D.Ill. 1977).[3]

---

3. In *S.E.C. v. W. J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Supreme Court held that the investors must rely "solely" upon the efforts of others to derive a profit. *Id.* at 298, 66 S.Ct. at 1102. The Ninth Circuit has given a realistic interpretation: "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the fail-

ure or success of the enterprise." *S.E.C v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). The Supreme Court declined to express an opinion on this interpretation in *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852 n. 16, 95 S.Ct. 2051, 2060 n. 16, 44 L.Ed.2d 621 (1975).

## II. Statute of Limitations

■ On the face of the complaint, it is clear the applicable limitations periods have expired if measured from the date of plaintiffs' lot purchases. Plaintiffs, however, point to their allegations that defendants concealed the problems at Pueblo West as sufficient to toll the limitations periods.[4] The district court rejected the tolling argument, finding that plaintiffs' failure to discover their causes of action resulted from their own lack of diligence and, in any event, that the statute of limitations in the ILSFDA is absolute, not subject to any equitable exceptions such as fraudulent concealment.

### A. The Securities Laws Violations

■ There is no federal statute of limitations applicable to the provisions of the securities acts under which plaintiffs seek relief: Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b), and S.E.C. Rule 10b–5; Securities Act of 1933 § 17, 15 U.S.C. § 77q. As with other judicially implied causes of action, suits brought under these provisions are subject to the limitations period applied to actions of the same kind—here fraud—by the law of the state where the alleged violation occurred. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *Nickels v. Koehler Management Corp.*, 541 F.2d 611, 613 (6th Cir. 1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). The statute of limitations for fraud in Colorado is three years. Colo.Rev.Stat. §§ 13–80–108, 13–80–109 (1973).

■ This court and others have held that while state statutes of limitations apply, tolling is a matter of federal law. *See, e.g., Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir. 1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Janigan v. Taylor*, 344 F.2d 781, 784 (1st Cir.), *cert. denied*, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). *See also* 1 A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud* § 2.5(1), at 42 (1979). For reasons equally applicable to implied securities fraud actions, the Supreme Court has recently held that coordinate state tolling rules apply along with state statutes of limitations in suits brought under 42 U.S.C. § 1983. *Board of Regents v. Tomanio*, —— U.S. ——, —————, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980). We need not decide whether *Board of Regents* alters the law in securities fraud cases as well, because the state and federal tolling rules here coincide. Under both Colorado and federal law, the limitations period begins to run when the aggrieved party discovers, or should have discovered by the exercise of reasonable diligence, the facts constituting the fraud. *Compare Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 347, 22 L.Ed. 636 (1875); *de Haas v. Empire Petroleum Co.*, 435 F.2d 1223, 1225–26 (10 Cir. 1970) *with Wright v. Nelson*, 125 Colo. 217, 242 P.2d 243, 247–48 (1952); *Pipe v. Smith*, 5 Colo. 146 (1879); Colo.Rev.Stat. § 13–80–109 (1973).

■ The plaintiffs alleged that defendants failed to disclose obviously relevant information and took affirmative steps to hide the problems which form the basis of plaintiffs' complaints.[5] The district court

---

4. While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 597 (4th Cir. 1976); *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946, 948 (3d Cir. 1971). Statute of limitations questions may, therefore, be appropriately resolved on a Fed.R.Civ.P. 12(b) motion. *See* [5] C. Wright & A. Miller, *Federal Practice & Procedure* § 1357, at 606–08 (1969).

5. Plaintiffs' amended complaint alleges that defendants' fraudulent concealment consisted of:

    a. Failing . . . to inform Plaintiffs of the availability of service fee to be charged all Pueblo West Lot owners when water and sewer service was extended to their unbuilt lots.

    b. Publishing newsletters and reports which were disseminated to Pueblo West land owners, including Plaintiffs, stating in glowing terms the progress of Pueblo West during the years 1970 to the present, so as to create the false and misleading impression

did not challenge the sufficiency of plaintiffs' averments about defendants' actions; it found, instead, that because the fraud was readily discoverable on the land, the statute had run against plaintiffs. However, the plaintiffs' allegations, asserting affirmative conduct to conceal the fraud, are sufficient to invoke the doctrine of equitable tolling at this stage in the proceeding. *See Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978). *Cf. Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

The question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law. *See Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168, 172–73 (10th Cir. 1974); *de Haas v. Empire Petroleum Co.*, 435 F.2d 1223, 1226 (10th Cir. 1970); 6 L. Loss, *Securities Regulation* 3905 (2d ed. Supp. 1969); 10 C. Wright & A. Miller, *Federal Practice & Procedure* § 2734, at 651 (1973). We find no special rule that attaches to fraud in connection with real estate improvements. A special rule would be particularly questionable where, as here, the promised amenities were not to be built on land purchased by plaintiffs and where some construction had been undertaken. The complaint also alleges fraud involving water systems and sources, sewer facilities, zoning decisions, resale processing, "availability of service" fees, and other rates and charges for the municipal budget. None of these could be observed on the land purchased by plaintiffs. The possibility of a fiduciary relationship and the degree of plaintiffs' expertise in appreciating the significance of observable facts further complicate the due diligence issue. Dismissal of the securities claims on the pleadings was, therefore, improper.[6]

---

that there were no problems in the Pueblo West development.

    c. Sending to land owners within Pueblo West notices regarding the settlement of the criminal charges brought against McCulloch by the District Attorney of Pueblo County, Colorado, stating that all problems had been solved and that Pueblo West was well on its way to being a viable community.

Record, vol. 1, at 42–43.

## B. *The ILSFDA*

### *Equitable Tolling*

The statute of limitations governing plaintiffs' second theory of recovery poses a different problem. The sufficiency of the allegations of fraudulent concealment and due diligence becomes irrelevant if, as the district court decided, the statute of limitations under the ILSFDA does not admit to any equitable exceptions.

■ Because the Supreme Court has declared that equitable tolling principles are "read into every federal statute of limitation," *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); *see also Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir.), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969), we are reluctant to interpret a federal statute as imposing an absolute bar. This broad rule, however, must be read in light of congressional prerogative. When applying equitable doctrines, the Supreme Court has specifically noted the absence of any indication of contrary congressional intent. *See, e.g., Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 234, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959); *Holmberg v. Armbrecht*, 327 U.S. at 395, 66 S.Ct. at 584. *See also United States v. Reliance Insurance Co.*, 436 F.2d 1366, 1370 (10th Cir. 1971).

We find the language of the ILSFDA indicative of such a contrary congressional intent. The statute of limitations under the Act appears to preclude the operation of the equitable tolling doctrine. When this suit was brought, the statute read:

    No action shall be maintained to enforce any liability created under section 1709(a) or (b)(2) of this title unless

---

6. Because we are remanding the securities claims, we need not discuss plaintiffs' assertion that the district court considered some extraneous oral evidence on the issue of due diligence, transforming defendants' motion into one for summary judgment, *see* Fed.R.Civ.P. 12(b), for which plaintiffs should have been allowed to submit pertinent evidentiary materials.

brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 1709(b)(1) of this title, unless brought within two years after the violation upon which it is based. *In no event* shall any such action be brought by a purchaser more than three years after the sale or lease to such purchaser.

15 U.S.C. § 1711 (emphasis added). The last sentence of this section uses strong and unambiguous terms which, if not meant to create an absolute bar to untimely suits under the ILSFDA, are extraneous and meaningless. Statutory interpretation, then, directs us to the conclusion that "[w]here the statute expressly provides for a tolling period for fraudulent concealment, and then includes a secondary date which 'in no event' can be surmounted, there is good basis for the belief that the latter date was intended as an absolute barrier to the filing of suits." *Timmreck v. Munn*, 433 F.Supp. 396, 408 (N.D.Ill. 1977).

▇▇▇ With few exceptions, courts addressing the problem have found that the three-year limitation in the ILSFDA cannot be tolled by equitable principles.[7] *See Timmreck v. Munn*, 433 F.Supp. at 408–09; *Husted v. Amrep Corp.*, 429 F.Supp. 298, 306 (S.D.N.Y. 1977); *Hester v. Hidden Valley Lakes, Inc.*, 404 F.Supp. 580, 582 (N.D. Miss. 1975); *Maher v. J. R. Williston & Beane, Inc.*, 280 F.Supp. 133, 137 (S.D.N.Y. 1967). *Contra, Fuls v. Shastina Properties, Inc.*, 448 F.Supp. 983, 987–88 (N.D.Cal.

1978); *Happy Investment Group v. Lakeworld Properties, Inc.*, 396 F.Supp. 175, 188 (N.D.Cal. 1975). This interpretation is consistent with the interpretation generally given the similar terms of the statute of limitations under § 13 of the Securities Act of 1933, the statute upon which the ILSFDA was based. *See, e.g., Timmreck v. Munn*, 433 F.Supp. at 408; *United States v. Del Rio Springs, Inc.*, 392 F.Supp. 226, 228 (D.Ariz. 1975). The three-year limitation in the 1933 Act, 15 U.S.C. § 77m, has been held to be an absolute bar, notwithstanding allegations of fraudulent concealment. *See Brick v. Dominion Mortgage & Realty Trust*, 442 F.Supp. 283, 291 (W.D.N.Y. 1977); *Fischer v. International Telephone & Telegraph Corp.*, 391 F.Supp. 744, 748 (E.D. N.Y. 1975); *Shonts v. Hirliman*, 28 F.Supp. 478, 486 (S.D.Cal. 1939); *Cowsar v. Regional Recreations, Inc.*, 65 F.R.D. 394, 399, (M.D.La. 1974). Finally, finding the ILSFDA to contain an absolute bar is consistent with later congressional action. In 1979 the ILSFDA was amended to extend the "unduly short" maximum limitation "to three years after the discovery of the violation or after discovery should have been made." H.R.Rep. No. 154, 96th Cong., 1st Sess. 38, *reprinted in* [1979] U.S.Code Cong. & Admin.News, 2317, 2354.

### Time of Sale

▇▇▇ Plaintiffs next argue that even if their right to sue under the ILSFDA is irretrievably lost three years after the sale of the property, this suit is not barred because a "sale" is not complete until all installments on the real estate contract are paid.

---

7. In *Bomba v. W. L. Belvidere, Inc.*, 579 F.2d 1067 (7th Cir. 1978), it was held that the ILSFDA statute of limitations is not a bar to the application of the doctrine of equitable estoppel. We agree with the Seventh Circuit's conclusion that equitable estoppel may prevent reliance on a statute of limitations which nevertheless cannot be tolled by other equitable principles. *See id.* at 1070. Equitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forgo enforcing his right until the statutory time has lapsed. *See, e.g., Glus v. Brooklyn Easter. Dist. Terminal*, 359 U.S. 231, 233–34, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959); *United States v. Reliance Ins. Co.*, 436 F.2d 1366, 1370–71 (10th Cir. 1971). The doctrine of equitable tolling, on the other hand, is grounded in the fraudulent concealment of the harm which gives rise to the right to sue. *See generally* Comment, *Fraudulent Concealment as Tolling the Antitrust Statute of Limitations*, 36 Fordham L.Rev. 328, 328–30 (1967). Section 1711 of the ILSFDA recognizes the problem of discovering the violation, but nonetheless cuts off suit three years after sale. It therefore appears to bar equitable tolling at three years while leaving open the possibility of equitable estoppel.

**1044**

The regulations issued under the ILSFDA define "sale" as "any obligation or arrangement for consideration to purchase." 24 C.F.R. § 1710.1(n). This definition emphasizes the legal obligation to purchase rather than the payment or receipt of title[8] by the purchaser, and interpreting courts have uniformly found the sale to be at the time of signing the initial contract. *See Fogel v. Sellamerica, Ltd.*, 445 F.Supp. 1269, 1275 (S.D.N.Y. 1978); *Husted v. Amrep Corp.*, 429 F.Supp. 298, 305–06 (S.D. N.Y. 1977); *Bongratz v. WL Belvidere, Inc.*, 416 F.Supp. 27, 29 (N.D.Ill. 1976); *Davis v. Rio Rancho Estates, Inc.*, 401 F.Supp. 1045, 1048 (S.D.N.Y. 1975). It is entirely consistent with stated congressional objectives to define "sale" in a real estate market as contract formation rather than contract discharge. Real estate payments are commonly not completed for decades.[9] We are sensitive to the need for curbing unscrupulous real estate developers' incentive for fraudulently inducing purchasers to continue making payments on worthless contracts. However, we are limited by a statute which represents a cautious intrusion into a new field of federal regulation[10] and we are not at liberty to extend liability as plaintiffs suggest. We therefore affirm the district court's finding that plaintiffs' claims under the ILSFDA are barred.

We affirm the district court's dismissal of the claim under the ILSFDA and reverse as to the claims based on federal securities laws for further proceedings.

---

**8.** Because the statute governs both sales and leases, *see, e.g.*, 15 U.S.C. § 1703(a)(1), (2), it is clear that passage of title is not the critical factor in initiating liability.

**9.** The Securities Act of 1933, the general model for the ILSFDA, defines "sale" to include "every contract of sale or disposition of a security." Securities Act of 1933 § 2(3), 15 U.S.C. § 77b(3). *See also* Securities Exchange Act of 1934 § 3(a)(14), 15 U.S.C. § 78c(a)(14). Written commitments or pledges, paralleling land sales contracts have been interpreted as securities "sales." *See Lawrence v. S.E.C.*, 398 F.2d 276, 280 (1st Cir. 1968); *S.E.C. v. Pig'n Whistle Corp.*, 359 F.Supp. 219, 221 (N.D.Ill. 1973), and "purchasers" have been defined in terms of persons with contractual rights. *See Blue Chip*

*Stamps v. Manor Drug Stores*, 421 U.S. 723, 750–51, 752, 95 S.Ct. 1917, 1932, 1933, 44 L.Ed.2d 539 (1975). We, however, need not decide the perimeters of "sale" for securities laws purposes.

**10.** *See* H.R.Rep. No. 154, 96th Cong., 1st Sess. 37–39, *reprinted in* [1979] U.S.Code Cong. & Admin.News 2317, 2352–54, for a discussion of the restrictive features of the original ILSFDA lifted by the 1979 amendments. The amendments also eliminate the interpretive problem inherent in the word "sale" by providing that the statute of limitations begins to run with regard to certain violations at "the date of signing." 15 U.S.C.A. § 1711(a)(1) (West 1980 Supp.). *See also* 15 U.S.C.A. § 1711(b) (West 1980 Supp.).