**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOSEPH W. TEAGUE; HELEN B.
TEAGUE; STEVEN ALLEN BARKER;
RITA STRAHOWSKI; SWANNEE BECK;
KAREN PEREZ TUCKER, Lifetime
Partners of PTL, as representatives
of a nationwide class consisting of
150,290 Lifetime Partners and of
27,839 persons who have partially
paid for lifetime Partnerships,
Plaintiffs-Appellants,

v.

No. 96-2186

JAMES O. BAKKER; DAVID A.
TAGGART; AIMEE GARCIA CORTESE,
Defendants-Appellees,

and

DELOITTE, HASKINS & SELLS; ROE
MESSNER; MESSNER ENTERPRISES;
COMMERCIAL BUILDERS OF KANSAS,
INC.; LAVENTHOL & HORWATH;
WILLIAM J. SPEARS,
Defendants.

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.

Lacy H. Thornburg, District Judge.

(CA-87-514-3)

Argued: March 6, 1997

Decided: April 8, 1998

Before RUSSELL* and NIEMEYER, Circuit Judges, and HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Wendell R. Bird, BIRD & ASSOCIATES, Atlanta, Georgia, for Appellants. Michael Eli Quiat, USCHER, QUIAT & USCHER, Hackensack, New Jersey; Ben Cotten, COTTEN & SELFON, Washington, D.C., for Appellees. **ON BRIEF:** David J. Myers, BIRD & ASSOCIATES, Atlanta, Georgia; Thomas T. Anderson, Samuel F. Trussell, THOMAS T. ANDERSON & ASSOCS., Indio, California; Fred H. Moody, Jr., MCKEEVER, EDWARDS, DAVIS & HAYS, Bryson City, North Carolina, for Appellants. Lamar Gudger, GUDGER & GUDGER, Asheville, North Carolina, for Appellee Bakker; Nelson S. Casstevens, Jr., CASSTEVENS, HANNER, GUNTER & GORDON, Charlotte, North Carolina, for Appellees Bakker and Cortese.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this case involving the sale of lodging benefits in a vacation park, the district court instructed the jury that"[i]f the investors were

_____

*Judge Russell participated in the hearing of this case at oral argument but died prior to the time the decision was filed. The decision is filed by a quorum of the panel. See 28 U.S.C.A. § 46(d) (West 1993).

2

attracted primarily by the prospect of acquiring use and not [by] financial returns on their investment there is no security." The jury found that the real estate interest in question was not a security as defined under federal securities law. We must decide whether this portion of the jury instructions, in conjunction with the entire jury charge, adequately stated the controlling law. Concluding that it does, and that there is no other reversible error, we affirm.

I.

We discussed the facts and procedural history of this case at length in Teague v. Bakker, 35 F.3d 978, 981-985 (4th Cir. 1994) ("Teague I"), cert. denied, 513 U.S. 1153 (1995), and we refer the reader to that opinion for any details missing here. In sum, the plaintiffs are members of a class of approximately 160,000 individuals who purchased "Lifetime Partnerships" from the television evangelist James O. Bakker and his PTL ministry. The partnerships ostensibly provided partners with short-term annual lodging at the "Heritage Village" vacation park, an addition to the "Heritage USA" religious theme park in South Carolina. Bakker planned to finance the construction of the necessary hotels and bunkhouses through the sale of the partnerships. Although a certain percentage of the rooms would be reserved for use by partners, the remaining rooms were to be rented at market price in order to finance the maintenance and operation of the facilities. This vision proved illusory. The overwhelming majority of the partners never received the lodging benefits because Bakker wildly oversold the partnerships and failed to construct all of the promised buildings.

In late 1987, the plaintiffs filed this suit, alleging various claims against Bakker and others associated with the Lifetime Partnership scheme. Of particular relevance to this appeal, the plaintiffs sought to hold Bakker liable for federal and state securities law violations. The case was tried in 1990. Near the close of the evidence, the district court held that the partnerships were not "securities" as a matter of law. Accordingly, the district court dismissed the plaintiffs' securities law claims. The jury eventually found Bakker liable for common law fraud, however, resulting in a judgment of $129 million in damages.

Both Bakker and the plaintiffs appealed various issues stemming from the 1990 trial. In Teague I, we upheld the common-law fraud

3

judgment, but reinstated the plaintiffs' securities claims against Bakker and remanded for a retrial. 35 F.3d at 990-991, 995. At the close of the retrial, the district court instructed the jury on the "investment contract" and "risk capital" tests for determining whether an interest is a security. The jury found that the partnerships were not securities. The plaintiffs now argue that the district court erroneously instructed the jury concerning the "investment contract" test.

## II.

The standard of review in this case is well established. We will not reverse a jury verdict based on alleged errors in a trial court's jury instructions if the charge, as a whole, adequately states the controlling law. Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987).[1]

## III.

The Securities Act of 1933 and the Securities Exchange Act of 1934 define "security" to include an "investment contract." 15 U.S.C. §§ 77b(a)(1), 787c(a)(10). The Supreme Court developed a definition of the term "investment contract" in a series of opinions spanning four decades. See SEC v. C.M. Joiner Leasing Corp. , 320 U.S. 344 (1943); SEC v. W.J. Howey Co., 328 U.S. 293 (1946); United Housing Foundation, Inc. v. Forman, 421 U.S. 837 (1975); and International Brotherhood of Teamsters v. Daniel, 439 U.S. 551 (1979). According to the Court, an investment contract exists where there has been an investment in a common enterprise that, through the entrepreneurial or managerial efforts of others, is reasonably expected to generate profits for the investor in the form of capital appreciation or participation in earnings. Daniel, 439 U.S. at 558-61; Forman, 421 U.S. at 852-53; Howey, 328 U.S. at 298-99.

---

[1] To our chagrin, the joint appendix does not contain a transcript of the jury charge. Though we obtained a complete transcript for ourselves, we would have been spared this annoyance had counsel paid close attention to the rules of court. See Fed. R. App. P. 30(a) ("The appellant must prepare and file an appendix to the briefs which must contain: ... (4) any ... parts of the record to which the parties wish to direct the particular attention of the court.").

4

Plaintiffs contend that the partnerships are "investment contracts" under this law. The district court instructed the jury that "[i]f the investors were attracted primarily by the prospect of acquiring use and not [by] financial returns on their investment there is no security." The plaintiffs argue that the word "primarily" should have been replaced with the word "solely" in order to bring the charge into conformity with the Supreme Court's holding in Forman.

Forman announced the rule that transactions solely for use are not securities as a matter of law. On the other side of the spectrum, in Howey, the Supreme Court held that transactions solely for profit are securities as a matter of law. In Teague I, we recognized that mixed-nature transactions should be submitted to the jury for a determination. Thus, the problem confronting the district court was how to convert this assessment into a practical legal test for the jury.

The district court's solution, to instruct the jury that "[i]f the investors were attracted primarily by the prospect of acquiring use and not [by] financial returns on their investment there is no security," is supported by common sense and by persuasive precedent from other federal circuit courts. In Rice v. Braniger Organization, Inc., 922 F.2d 788 (11th Cir. 1991), a case involving the sale of equity memberships in real estate, Retired Justice Powell interpreted his own Forman decision. Justice Powell concluded that the "United States Supreme Court has held that where those who purchase something with the primary desire to use or consume it, the security laws do not apply."[2] Id. at 790 (emphasis added). The Rice opinion went on to examine both promotional materials offered by the sellers and the motivations of the purchasers. Id. Similarly, in Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036 (10th Cir. 1980), the court held that the subdivided real estate lots purchased by the plaintiffs were "not securities if the purchasers were induced to obtain them primarily for residential

_____

[2] In Teague I we distinguished Rice on its facts, but did not disavow Justice Powell's reading of his earlier Supreme Court opinion. 35 F.3d at 989 n.13. It is also worth noting that in Daniel, where the Supreme Court held that an employee's interest in a noncontributory, compulsory pension plan is not a security, the Court asserted that the "employee is selling his labor primarily to obtain a livelihood, not making an investment." 439 U.S. at 560.

5

purposes--`to occupy the land or develop it themselves.'" Id. at 1040 (quoting Howey, 328 U.S. at 300.)

Plaintiffs also attack the instruction because it is stated in terms of the purchasers' subjective motivations. There is a small kernel of merit in plaintiffs' argument, but not enough to upset this verdict. The subjective intention of a given purchaser cannot control whether something is a "security," else some might have purchased securities while others did not. The proper focuses of the inquiry are on the transaction itself and the manner in which it is offered. On the other hand, where most intended purchasers share a common understanding of, and have similar motives stoked by, an offering, the "subjective" understanding and motives are powerful evidence of the objective intent and effect of the offering. In other words, the subjective feeling of the vast majority of purchasers is very likely the feeling the seller objectively intended to produce.

The test for the adequacy of a jury instruction "is not one of technical accuracy in every detail." Spell, 824 F.2d at 1395. Taken as a whole, the jury charge adequately conveyed to the jury that it was to determine whether consumption or investment was the dominant theme of the transaction.

IV.

Our decision renders the majority of the plaintiffs' other claims moot. One issue does bear brief mention, however. Bakker refused to answer questions about the alleged securities fraud, citing his Fifth Amendment right against self-incrimination. Plaintiffs requested that the district court compel Bakker to testify; the court declined. On appeal, plaintiffs assert that the possibility of Bakker's facing additional charges is and was so remote that his right against self-incrimination would not have been abridged by compelled testimony. See Zicarelli v. New Jersey Commission of Investigation, 406 U.S. 472 (1972).

Unlike in Zicarelli, where the questions posed (involving crimes in New Jersey) could not have led to the foreign prosecution the defendant supposedly feared, Bakker would have taken a palpable risk had he testified. It may well be that there is little current likelihood of

6

prosecution; on the other hand, the unlikeliness is the result of prosecutorial discretion, and new information could always reignite interest. Bakker has the right to refuse to provide the kindling.[3]

Accordingly, we affirm the judgment of the district court.[4]

<u>AFFIRMED</u>

_____

[3] Plaintiffs also argue that the lapse of time since the events in question would protect Bakker. We disagree. The Sixth Amendment's guarantee of a speedy trial attaches only when an individual becomes an "accused." It has no application to preindictment delays. <u>United States v. Marion</u>, 404 U.S. 307, 313 (1971).

[4] Appellants' motion to strike portions of Bakker's brief is denied.

7