**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 29, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DAWN CANFIELD,

     Plaintiff - Appellant,

v.

DOUGLAS COUNTY, a public entity;
DOUGLAS COUNTY DEPARTMENT
OF HUMAN SERVICES; VALERIE
ELSON, individual and official capacity;
LESA ADAME, individual and official
capacity; CHERYL CAPLECHA,
individual and official capacity; TRACY
MUDGET, individual and official capacity;
KRISTINE JOHNSON, individual and
official capacity; NICOLE BECHT,
individual and official capacity; PATRICK
SWEENEY, individual and official
capacity; SHERRY HANSEN, individual
and official capacity; DOES 1 THROUGH
10, inclusive,

     Defendants - Appellees.

No. 15-1014
(D.C. No. 1:14-CV-00461-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Dawn Canfield sued the defendants under 42 U.S.C. § 1983, alleging that they had deprived her of her constitutional rights as a parent by presenting false testimony and by suppressing evidence during state juvenile-court proceedings, thereby causing her to lose custody of her children.  Her second amended complaint (the Complaint) also included several related claims under Colorado law. The district court dismissed her federal claims with prejudice for failure to state a claim because they were untimely on their face.[1]  It declined to exercise supplemental jurisdiction over her state-law claims and dismissed them without prejudice.  We affirm.

**BACKGROUND**

The Complaint sought damages from Douglas County, its Department of Human Services (DHS), and a number of social workers and others employed by Douglas County or the DHS.  Because we are reviewing a dismissal on the pleadings, we set forth the facts as alleged in the Complaint.

In 2010 Ms. Canfield applied for a temporary restraining order against her husband.  This matter was set for hearing on September 10, 2010.  Before the hearing the defendant social workers interviewed her husband, who made false statements about her, characterizing her as mentally unstable and a threat to her children.  The social workers failed to investigate Mr. Canfield's statements and improperly took them as true.

---

[1] The parties consented to entry of final judgment by a United States Magistrate Judge.  *See* 28 U.S.C. § 636(c).

At the September 10 hearing Ms. Canfield was confronted by a DHS social worker who expressed concern about her mental health and the safety of her children. Either at that hearing or a later one (the Complaint is unclear) DHS social workers testified that Ms. Canfield was mentally unstable and recommended that her children be removed from her home and placed with her husband. In addition, the defendants initiated a dependency-and-neglect (D&N) proceeding on October 4, 2010. The social workers presented testimony and filed an assessment containing a false statement regarding Ms. Canfield's prior conduct. The court ordered her to relinquish custody to her husband, and allowed her only supervised visitation.

Over the course of a year and a half, DHS and its agents submitted false information and testimony to the court, presented false reports and findings concerning Ms. Canfield's parenting abilities, coerced her into agreeing to a stipulated adjudication that adversely affected her ability to regain custody of her children, required her to undergo examinations with biased examiners, interfered with her therapy, and ignored or covered up Mr. Canfield's inadequacies as a parent. Throughout the various proceedings, DHS agents promised Ms. Canfield that if she cooperated with DHS, her custodial rights would be restored. As a result of the defendants' actions, the state court entered a final Order of Allocation of Parental Responsibilities on February 24, 2012, which awarded Mr. Canfield "sole decision-making and allocation of parental responsibilities," Complaint, ¶ 51, and limited Ms. Canfield to supervised visitation in a professional facility. Ms. Canfield filed this action on February 21, 2014.

3

## DISCUSSION

"We review de novo the dismissal of an action under Rule 12(b)(6) based on the statute of limitations." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). "We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (internal quotation marks omitted). "While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

In § 1983 actions we apply the forum state's statute of limitations for personal-injury claims, *Wallace v. Kato*, 549 U.S. 384, 387 (2007), and generally apply the forum state's tolling rules, *id.* at 394. Colorado, the forum state here, provides a two-year statute of limitations for personal-injury claims. Colo. Rev. Stat. § 13–80–102.[2] For the accrual date, however, we look to federal law. *See Wallace*, 549 U.S. at 388. Under federal law, "[a] civil rights action accrues when facts that

---

[2] The district court applied Colo. Rev. Stat. § 13-80-102(1)(g), which provides a two-year statute of limitations for "[a]ll actions upon liability created by a federal statute where no period of limitations is provided in said federal statute." But we rely on the residual statute of limitations in § 13-80-102(1)(i), which pertains to "[a]ll other actions of every kind for which no other period of limitations is provided." *See Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993) (adopting two-year residual limitations period in § 13-80-102(1)(i) for § 1983 actions); *Arnold v. Duchesne Cty.*, 26 F.3d 982, 985 n.5 (10th Cir. 1994) (explaining that this court has applied Colorado's residual statute of limitations, rather than its statute applicable to federal actions for which there is no limitations period, to § 1983 claims).

4

would support a cause of action are or should be apparent." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (internal quotation marks omitted).

We agree with the district court that Ms. Canfield's substantive-due-process claims accrued in 2010, when her children were ordered removed from her custody, as she knew or should have known at that point that her right to familial association had been violated. Because Ms. Canfield did not file this action until February 21, 2014, the statute of limitations barred her federal civil-rights claims. She makes several arguments to salvage her claims, but they are not persuasive.

First, Ms. Canfield argues that her claims did not accrue until February 24, 2012, when the state juvenile court entered its final order determining her parental rights.[3] We disagree. Her relevant injury became evident when her children were first ordered removed from her custody—the first loss of parental rights that she attributes, at least in part, to the defendants. *Cf. Thomas v. Kaven*, 765 F.3d 1183, 1187-88, 1190, 1196 (10th Cir. 2014) (parents stated claim for violation of the right to familial association after child's doctors and therapists placed medical hold on child and sought state-court order for involuntary residential treatment, even though defendants abandoned involuntary-treatment proceeding before court held hearing or entered any final order). The cause of action accrued at that time even though "the full extent of [her] injury [was] not then known or predictable." *Varnell v. Dora Consolidated Sch. Dist.*, 756 F.3d 1208, 1216 (10th Cir. 2014) (internal quotation

---

[3] The defendants contend that she forfeited this argument by failing to raise it in district court. We disagree. She presented the argument sufficiently to preserve it for our review. *See* Aplt. App. at 136-37 (response to motion to dismiss).

marks omitted). Nor was commencement of the limitations period delayed, as Ms. Canfield asserts, until the state court reached a final decision. *Cf. Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo. 2007) (accrual date for bad-faith tort suit based on harmful tardiness in handling worker's compensation claim was not postponed until final resolution of worker's compensation claim). She did not need to await the final decision to know that her parental rights had been injured.

Second, Ms. Canfield argues that her complaint includes a conspiracy claim and that for such a claim, "the statute of limitations accrues when the conspiracy is complete, not when it begins." Aplt. Opening Br. at 19. She contends that the conspiracy did not conclude until the juvenile court entered its final order allocating parental rights. But the district court properly determined that the Complaint did not assert a claim for conspiracy. Although Ms. Canfield cites three instances in her 38-page Complaint where she alleged that the defendant caseworkers had "conspired" against her, these passing references—which fail to particularize why it is plausible to believe that all the defendants entered into a common agreement, as opposed to engaging in parallel conduct—do not suffice to state a conspiracy claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (to plead a conspiracy claim, allegations of parallel conduct must be "placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action"). A conclusory allegation of conspiracy will not suffice. *See id.* Further, Ms. Canfield's response in district court to the defendants' motion to dismiss failed to argue that her purported conspiracy claim did not accrue until entry

6

of the 2012 order. It says merely, "The statute of limitations runs in a conspiracy claim under § 1983 when the conspiracy claim accrued and not when the defendants commenced the conspiracy." Aplt. App. at 137. It was not the job of the district court to rescue Ms. Canfield's claim by making her legal arguments and factual allegations for her. In her reply brief, Ms. Canfield requests leave to amend her complaint to state a conspiracy claim if it fails to do so. But we deny this request, made for the first time in the reply brief, because (1) she made no specific request in district court to amend her complaint to state a conspiracy claim, even after the court had put her on notice that she had not stated such a claim; (2) she had counsel in district court; and (3) she had already amended her complaint twice.

Third, Ms. Canfield argues that her claims should be equitably tolled until the state court entered its final order because the defendants' "wrongful conduct prevented [her] from pursuing . . . her claim." Aplt. Opening Br. at 22. *See Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996) (equitable tolling is appropriate "where the defendant's wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner."). The defendants' alleged wrongful conduct, which "discouraged and circumvented Ms. Canfield's efforts [to pursue] a civil action," consisted of "false promises to her that the fastest way to get her children back was to comply with their demands." Aplt. Opening Br. at 24. But the Complaint alleges that Ms. Canfield knew of the defendants' false statements throughout the state litigation, she was continually at odds with the defendants, and the defendants pursued action against her almost relentlessly. In this context it would

7

have been unreasonable for her to delay filing this suit for fear that the litigation would harm her in the state proceedings.

Fourth, Ms. Canfield argues that under the "continuing violation doctrine," her claims continued to accrue during the entire time period covered by her complaint. As the district court noted, however, this court has never held that the continuing-violation doctrine applies to § 1983 cases. And we have assumed that even if it does, "the doctrine is triggered by continual unlawful acts, not continual ill effects from the original violation." *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011) (internal quotation marks omitted). Ms. Canfield does not allege any discrete unlawful acts that occurred during the two years before she filed this action. The last affirmative act taken by the defendants alleged in the complaint was in January 2012, when social workers testified at a hearing on the defendants' motion for allocation of parental responsibility. This act preceded the two-year period before Ms. Canfield filed suit. (The Complaint does allege that "Douglas County, through DHS, continues to this day to deny Plaintiff her parental rights by the fraudulent omissions of evidence and outright suppression of material exculpatory evidence, by and through its public employees." Aplt. App. at 179, ¶ 55. But this sentence fails to adequately allege additional wrongful acts. *See Pike v. City of Mission*, 731 F.2d 655, 660 (10th Cir. 1984) (plaintiff could not rely on continuing-violation theory where he alleged that the defendants "continued to deny him reinstatement and a due process hearing" and to retain false information about him in their files during the limitations period, because "[t]hese acts are the natural result of the original

8

employment decision," not new grounds for relief), *overruled on other grounds*,

*Baker v. Board of Regents*, 991 F.2d 628, 633 (10th Cir. 1993).)[4]

Finally, Ms. Canfield argues that the limitations period should have been tolled because she was "mentally incompetent." Aplt. Opening Br. at 28-29. She admits that she was not *really* mentally incompetent, but she argues that DHS cannot have it both ways—arguing that she was not competent to be a parent and needed a guardian ad litem (GAL), yet was competent enough to understand that her constitutional rights had been violated as of September 10, 2010. The statute on which she relies, which deals with commencement of limitations periods for persons under a disability, provides that if such a person is represented by a legal representative, the representative has until two years after his or her appointment to take action on behalf of the person under a disability, notwithstanding any earlier expiration of the limitations period. Colo. Rev. Stat. § 13-81-103(1)(a). Ms. Canfield states that she was appointed a GAL in the state-court proceeding on October 28, 2011. Assuming the statute applies, her GAL thus had two years from that date, or until October 28, 2013, to file this action. The GAL failed to do so.

---

[4] Although Ms. Canfield's Complaint includes a prayer for injunctive relief, and a claim for declaratory relief against Douglas County, her claim for such relief does not allege additional specific acts that occurred or were threatened during the limitations period. Nor does Ms. Canfield rely on her claim for declaratory or injunctive relief to support her continuing-violation argument.

**CONCLUSION**

As the district court correctly determined, the allegations of Ms. Canfield's Complaint show that it was untimely filed. None of her arguments to the contrary has merit. We therefore affirm the judgment of the district court.

Entered for the Court


Harris L Hartz
Circuit Judge