**WOOLDRIDGE HOMES, INC., a California corporation, Plaintiff,**

v.

**BRONZE TREE, INC., a Colorado corporation, Defendant.**

No. 82–K–1729.

United States District Court,
D. Colorado.

Feb. 18, 1983.

B. Joseph Krabacher, Sachs, Klein & Seigle, Aspen, Colo., for plaintiff.

Thomas R. Bromberg and Robert W. Walter, Hall & Evans, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff's six claim complaint alleges violations of federal and state securities laws and breach of contract. Defendant moves under Rule 12(b)(6), F.R.Civ.P. to dismiss for failure to state a claim upon which relief can be granted. Defendant contends that the sale of the condominium unit which is the subject of this lawsuit is not a sale of a security or an investment contract and, therefore, the action cannot be one based on the securities laws. Jurisdiction is based on Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. § 1332.

The complaint alleges that Robert E. Wooldridge received a solicitation letter dated October 31, 1979 from Mountain Real Estate Association, Ltd., inviting offers in certain investment resort property located in Steamboat Village, Colorado. The condominium units to which the letter related were known as the Bronze Tree Condominiums. Wooldridge responded to the solicitation on November 2, 1979, and received a standard contract which he executed in the name of Wooldridge Homes on November 13, 1979, agreeing to make a $205,000 investment. Wooldridge tendered a $25,000 earnest money check which was deposited in an escrow account. A purchase agreement was entered "with the intent of making an investment in a growing resort community." Plaintiff maintains that it believed it was making a passive investment and anticipated little or no management of the unit would be required by it. Defendant, plaintiff alleges, is a controlling person of the sales agent, Mountain Real Estate Association, Ltd. Sever, a principal of the sales agent, communicated by telephone and letter that plaintiff's investment was increasing in value. Plaintiff avers it expected to earn profits from the investment and relied on the efforts of defendant to do

so. Plaintiff characterizes the investment as a common enterprise. By letter dated April 4, 1980, defendant informed plaintiff that defendant was seeking construction financing and that financial institutions with whom defendant was dealing may contact plaintiff for financial information regarding plaintiff's credit worthiness. Plaintiff alleges that defendant was using plaintiff's contractual commitment under the purchase agreement, and other investors' contractual commitments under similar agreements, to obtain construction financing. Defendant was delayed in obtaining financing for a construction loan until December, 1980 and construction was unable to continue during the winter of 1980–1981. Plaintiff claims that defendant represented through the sales agent that completion of the project was guaranteed for December, 1981, when in fact defendant contemplated or should have contemplated the delays in construction. Plaintiff seeks rescission of the purchase agreement and return of Wooldridge's earnest money deposit plus accrued interest.

Defendant filed its motion to dismiss and submitted an affidavit in support of the motion. Rule 12(b)(6) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

I have discussed the mechanics for converting a Rule 12(b)(6) motion to a Rule 56 motion in *Donovan v. Gingerbread House, Inc.,* 536 F.Supp. 627 (D.Colo.1982). To avoid further delay in this case by requiring the filing of additional briefs, affidavits and other documentation appropriate for consideration on a motion for summary judgment, I will not convert this motion and will not consider the tendered affidavit of David R. Travis at this time.

■ The parties agree that if this scheme can be characterized as a security or an investment contract, it must meet the three elements set forth in the paradigmatic case of *Securities & Exchange Commission v. W.J. Howey Company,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The elements require that an individual (1) invest his money (2) in a common enterprise, and (3) expect profit solely from the efforts of the promoter or a third party. 328 U.S. at 298–299. *Accord: United Housing Foundation v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036 (10th Cir. 1980).

## INVESTMENT OF MONEY

Investment of money requires the investor to commit his assets to an enterprise or venture in such a manner as to subject himself to financial loss. *Securities & Exchange Com. v. International Mining Exchange, Inc.,* 515 F.Supp. 1062, 1067 (D.Colo. 1981) (Kane, J.); *Stowell v. Ted S. Finkel Investment Services, Inc.,* 489 F.Supp. 1209, 1220 (D.Fla.1980). Defendant virtually concedes that plaintiff has made an investment of money by stating at page 2 of his motion "... the $25,000.00 earnest money deposit may constitute an 'investment' for purposes of the *Howey* test ..." Certainly the sale of a condominium for investment purposes is subject to financial loss due to various market factors. Neither side contends that there is any genuine dispute that this transaction qualifies as an investment of money.

## COMMON ENTERPRISE

Defendant disputes that the common enterprise element is present in this action arguing that the fortunes of the condominium purchaser were not interwoven with and dependent upon the efforts and success of Bronze Tree, Inc. or any third party as required by *Securities & Exchange Com. v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 478 (5th Cir.1974). Plaintiff contends that under Securities Act Release No. 5347, 17 C.F.R. section 231.5347 (January 4, 1973), the offer or sale coupled with an optional rental arrangement will constitute the offer of investment contracts.

There is debate on whether a horizontal or vertical relationship between the inves-

tor and promoter satisfies the common enterprise language of *Howey*. A vertical relationship is essentially a one-to-one arrangement between the customer and broker. A horizontal relationship is between an individual investor and the pool of other investors. *Securities & Exchange Com. v. International Mining Exchange, supra; Curran v. Merrill Lynch, Pierce, Fenner & Smith,* 622 F.2d 216 (6th Cir.1980). Some courts have adopted the horizontal approach. *See, e.g. Curran, supra; Hirk v. Agri-Research Council, Inc.,* 561 F.2d 96 (7th Cir.1977); *Milnarik v. M–S Commodities, Inc.,* 457 F.2d 274 (7th Cir.1972), *cert. denied,* 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144, while others have opted for the vertical approach. *See, e.g., Securities & Exchange Com. v. Koscot, supra; Miller v. Central Chinchilla Group, Inc.,* 494 F.2d 414 (8th Cir.1974); *Securities & Exchange Com. v. Glenn Turner Enterprises, Inc.,* 474 F.2d 476 (9th Cir.) *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). The Tenth Circuit has not adopted either approach.

The vertical relationship defines a common enterprise as one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties. *SEC v. Glenn Turner,* 474 F.2d at 482. Defendant argues that the fortunes of the condominium purchaser are not interwoven with and dependent upon the efforts and success of Bronze Tree, Inc. or any third party. Specifically, defendant relies on the fact that its arrangement with Ski Country Enterprises, Inc. (a management company) to manage the common areas and to provide administrative and supervisory management for the complex was not to exceed two years, after which the owners of the individual condominium units were free to engage professional management as they desired. Further, defendant points out that after the initial two year contract, the rental of condominiums was strictly optional. In other words "[i]f an owner chooses to make their (sic) condominium available for rental purposes, they can enter into a Rental Agreement with Ski Country." (Exhibit B, page 2)

Here, defendant's activities come within both the vertical and horizontal definitions of common enterprise. In attempting to obtain construction financing and by providing managerial services, however optional, the investors' profits are directly tied to the efforts of Bronze Tree, Inc. Without this effort the investor would lose the opportunity to participate in the rental pool. Thus, there is a one-to-one relationship between the investor and the promoter. Each investor is also in a common enterprise with the other investors. It is undisputed that defendant was in effect "pooling" pre-sale purchase commitments in order to obtain construction financing to fund the project. It is evident that the project would have gone forward only if sufficient investor interest had been generated on a pre-sale basis. If sufficient investor interest was not generated, the defendant would cancel the project by exercising its right under the purchase agreement. Clearly, the fortunes of the investors are "interwoven with and dependent upon the efforts and success of those seeking the investment or those of third parties." *Koscot,* 497 F.2d at 478.

Defendant cites *Aldrich, supra,* to support its argument that "the obligation to perform minimal managerial functions or to provide basic improvements does not transform a real estate sale into a securities transaction." *Id.* at 1040. Although defendant has gleaned relevant language from *Aldrich,* the Tenth Circuit reversed the district court's dismissal of plaintiff's complaint for failure to state a claim under the securities laws. The plaintiffs in *Aldrich* allegedly purchased real estate lots with investment intent, relying on representations of the defendants. As the Tenth Circuit noted:

> Central to this test [of the definition of a security] is the promotional emphasis of the developer. Characterization of the inducement cannot be accomplished without a thorough examination of the representations made by the defendants as the basis of the sale. Promotional materials, merchandising approaches, oral assurances and contractual agreements were considered in testing the nature of the product in virtually every relevant investment contract case. An action should not

be dismissed where, as here, the plaintiffs reasonably alleged the existence of investment intent and common enterprise and where nothing in the complaint precludes the finding of a security.

627 F.2d at 1039–40 (citations omitted).

The "character the investment is given in commerce" test was also employed in *Securities & Exchange Com. v. Joiner Leasing Corp.,* 320 U.S. 344, 352, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943), where it was held that central to this test is the promotional emphasis of the developer. The court found it imperative to make an analysis of the defendant's representations, promises, literature and "sales talks," as well as any express or implied understanding between plaintiffs and defendants. *Timmreck v. Munn,* 433 F.Supp. 396, 402–403 (N.D.Ill. 1977).

As applied to the present motion, no evidence regarding representations, sales and promotional materials or any understandings with the plaintiff has been submitted. The sale of real estate does not necessarily preclude finding an investment contract. The factual representations made by defendants in selling the condominiums are too sparse for a finding at this point that they are not selling investment contracts within the meaning of the securities laws.

## PROFITS SOLELY FROM THE EFFORTS OF OTHERS

Plaintiff maintains it had two independent bases for its expectations of profit in the condominium investment: capital appreciation, and rental income to be derived through the efforts of the defendant or third party. Plaintiff cites *Forman, supra,* for the proposition that the profits which must be expected for a transaction to qualify as an investment contract may be "either capital appreciation resulting from development of the initial investment ... or a participation in earnings resulting from the use of investors' funds." *Id.* 421 U.S. at 852, 95 S.Ct. at 2060. *Accord: Aldrich, supra.*

Although defendant concedes that plaintiff may have expected to receive some profit by virtue of the capital appreciation or rental income, defendant contends that this expectation was not derived solely from the effort of the promoter or a third party as is required under *Howey.* Defendant points to the fact that the increase in value of the condominium is inextricably tied to general economic factors, and that any representation made to plaintiff that the condominium would be a good "investment" is insufficient to establish the sale of a security. *Johnson v. Nationwide Industries, Inc.,* 450 F.Supp. 948 (N.D.Ill.1978). In addition, defendant maintains that to the degree plaintiff expected profits from the efforts of Ski Country Enterprises, Inc., plaintiff would have to elect to use the services of Ski Country and would retain control over usage of the condominium by himself and his guests. Defendant concludes that this essential element of *Howey* is absent.

It is well settled that the term "solely" is not to be given a literal interpretation. *SEC v. International Mining Exchange, supra* at 1069. *See also, Crowley v. Montgomery Ward & Co.,* 570 F.2d 877 (10th Cir. 1978); *Hector v. Wiens,* 533 F.2d 429, 433 (9th Cir.1976); *Koscot, supra.* In *Aldrich, supra,* the Tenth Circuit quoted with approval the Ninth Circuit opinion of *SEC v. Glenn Turner, supra,* as a realistic interpretation of the phrase. The test in that case was whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise. *SEC v. International Mining Exchange, supra* at 1069. Therefore, reliance of investors on the promoter need not be total. *McCown v. Heidler,* 527 F.2d 204 (10th Cir.1975). I hold that plaintiff has sufficiently met this third element of the *Howey* test and has plead the element of reliance sufficiently enough to withstand defendant's motion to dismiss.

Having found that all three elements of the *Howey* test have been met, I find that this scheme falls within the definition of a security and is subject to the

provisions of the acts. Defendant's motion to dismiss the securities claims is denied.

## BREACH OF CONTRACT CLAIM

Plaintiff's sixth claim for relief is based on breach of contract asserting that under the purchase agreement and written representations of the sales agent, "substantial completion" of the project was guaranteed by December 1, 1981. The project was not substantially completed by that date. Defendant moves to dismiss this claim for failure to state a claim upon which relief can be granted arguing that it made a good faith attempt to obtain and did obtain financing pursuant to the terms of the purchase agreement. Defendant further contends that delays in construction and extension of the date of completion were permitted under the terms of the contract and that there was no breach of the agreement on its part, so plaintiff's sixth claim for relief fails to state a claim against it. Plaintiff counters that it has alleged breaches by the defendant which the defendant has not controverted: that defendant breached the agreement by improperly attempting to extend such date beyond the actual period of delay experienced by the defendant; that there is no provision in the contract that would permit defendant to extend the date of substantial completion as it did based on the failure of defendant to obtain construction financing; and, defendant has not established that its inability to obtain materials necessary for construction was beyond its control, so it has failed to establish its right to recovery as a matter of law.

 The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief. The provisions must be read in conjunction with Rule 8(a) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Only when the pleading fails to meet this liberal standard is it subject to dismissal under Rule 12(b)(6). *See,* Wright & Miller, *Federal Practice and Procedure: Civil,* § 1356. I must limit my review to whether the claim has been adequately stated, and may not consider the merits. If the complaint or claim sets out a generalized statement of fact from which defendant may frame a responsive pleading, the claim will withstand a motion under this rule. I find that the claim is sufficient under Rule 8, and the motion to dismiss the sixth claim for relief is denied. It is therefore,

ORDERED that defendant's motion to dismiss is denied on all grounds. Defendant shall file its answer within 20 days of the date of this order.